UNITED STATES *v.* BUSS & WARNER (No. 782).[1]

HORSEHAIR HATS.

To determine a similitude the final question is one of fact, namely, What article named in the statute does the imported article most closely resemble in material, quality, texture, or use, comparison being made with some article which in any of those particulars would bring it properly within the designated class? And it is clear both as to texture and use the articles here, horsehair hats, may be, and are properly to be, compared with artificial horsehair hats.—Robins *v.* United States (1 Ct. Cust. Appls., 252; T. D. 31278). Paterson *v.* United States (166 Fed. Rep., 733; T. D. 29377) distinguished.

United States Court of Customs Appeals, March 20, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7275 (T. D. 31881).

[Reversed.]

*William L. Wemple,* Assistant Attorney General (*Martin T. Baldwin* on the brief), for the United States.

*Brown & Gerry* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise in question consists of untrimmed hats made of horsehair braid. The articles were assessed as horsehair hats assimilating imitation horsehair braid articles at 45 cents per pound and 60 per cent ad valorem under paragraph 405. The importer protested, claiming that the imported articles bore a closer similitude to straw hats and are dutiable under paragraph 422. The pertinent provisions of both sections are here quoted.

405. * * * Braids, laces, embroideries, galloons, neck rufflings, ruchings, fringes, trimmings, beltings, cords, tassels, ribbons, or other articles or fabrics composed wholly or in chief value of yarns, threads, filaments, or fibers of artificial or imitation silk or of artificial or imitation horsehair, by whatever name known, and by whatever process made, forty-five cents per pound, and in addition thereto, sixty per centum ad valorem.

[1] Reported in T. D. 32357 (22 Treas. Dec., 510).

422. Braids, plaits, laces, and willow sheets or squares, composed wholly or in chief value of straw, chip, grass, palm leaf, willow, osier, rattan, real horsehair, Cuba bark, or manila hemp, suitable for making or ornamenting hats, bonnets, or hoods, not bleached, dyed, colored or stained, fifteen per centum ad valorem; if bleached, dyed, colored, or stained, twenty per centum ad valorem; hats, bonnets, and hoods composed wholly or in chief value of straw, chip, grass, palm leaf, willow, osier, rattan, Cuba bark, or manila hemp, whether wholly or partly manufactured, but not trimmed, thirty-five per centum ad valorem; if trimmed, fifty per centum ad valorem. But the terms "grass" and "straw" shall be understood to mean these substances in their natural form and structure, and not the separated fiber thereof.

The board sustained the protest and the Government appeals. It is said by counsel for the importer that the board found the facts in favor of the importer. There was no testimony offered before the board except the protest and the return of the collector and appraiser. The board had before it no proof as to any fact which overcame the presumption arising from the classification by the collector. Nor, as we read the opinion of the board, do we find that there was any attempt to pass upon the question as a question of fact.

In the tariff act of 1897 there was no denominative provision for braids or hats made of real or artificial horsehair. Such braids and hats were originally held dutiable by the board by similitude to silk braids and hats, respectively. But this decision of the board was reversed in Paterson v. United States (166 Fed. Rep., 733; T. D. 29377), and that decision was later followed by the board. The board evidently believed that they were bound by the decision in the Paterson case and the case of Rheims v. United States (169 Fed. Rep., 662; T. D. 29632). The decision states:

Assumably the decisions in the Paterson and Rheims cases, *supra*, were known to Congress at the time of the passage of the tariff act of 1909, and Congress apparently adopted the court's rulings, at least so far as the braids are concerned, by making an *eo nomine* provision for such articles in the paragraph of the present act corresponding to the paragraph in the act of 1897 under which they had been assessed. No special provision was made, however, for hats made of real horsehair, and as the provision of the statute under which they had been assessed by similitude was reenacted without any substantial change, the importers contend that this is an indication of the approval by Congress of the classification prevailing at that time.

\*       \*       \*       \*       \*       \*       \*

The question is not entirely free from doubt. But we think that if the Congress had intended to change the law so as to exclude these hats from paragraph 422, they would have used language clearly expressive of such intent. As they have failed to make special provision for such hats, and have reenacted, without substantial modification, the provision of the previous law under which they were classified, we think the more reasonable view to take is that they did not intend to disturb the classification which prevailed under the act of 1897.

We accordingly hold that the hats are properly dutiable by similitude under paragraph 422, and the protest is sustained to this extent.

This is a mistaken application of the doctrine of the adoption by Congress of the court's rulings. What had been ruled by the court

prior to the enactment of the persent tariff law was that there being no provision for either real or artificial horsehair, it was necessary to examine other provisions of the tariff law to ascertain if they bore any similitude to any article named in the act. This they did, and found a similitude between hats of artificial or real horsehair and hats of straw, being a similitude of use. But what we are now concerned with is the question whether, artificial horsehair articles having been provided for, real horsehair hats bear a closer similitude to such artificial horsehair articles than they bear to straw hats. We find then that so far as the question of fact is concerned we must start with a presumption in favor of the collector's classification. It is, however, not of great importance in this case.

The question of similitude is a question of fact. Herrman *v*. Arthur (127 U. S:, 363, 370) and Benjamin Iron & Steel Co. (T. D. 31677). In the determination of that question certain rules of law may become important. But the final question is one of fact, namely, What articles named in the tariff schedule does the imported article most closely assimilate in material, quality, texture, or uses?

The evidence in this case does not disclose of what material horsehair is composed, if it can be resolved into material. If we take judicial knowledge of what composes imitation horsehair, we find that its chief component is cellulose, just as the chief component of straw is cellulose. So that in this respect the natural horsehair would as much resemble the one as the other.

In respect to similitude in quality, it is conceded that this general term has no special significance in the present case.

In the matter of texture, it seems very clear that the texture or structure of natural horsehair, as well as its general appearance, more clearly assimilate to artificial horsehair than to straw.

In determining this question, the concluding clause of paragraph 422 is not to be overlooked. This reads: "The term grasses and straw shall be understood to mean those substances in their natural form and structure, and not the separated fiber thereof." Comparing natural horsehair with natural straw made into the form of braids and hats, it would seem altogether clear that there is not as close an assimilation as there is between natural horsehair and artificial horsehair.

It is contended by the importer that, straw hats having been named *eo nomine*, similitude to straw hats is more definite than is the similitude to artificial horsehair articles, and the contention, as we understand it, is that in determining the application of the similitude clause it should first be ascertained whether the importation bears a similitude to an article named *eo nomine* in the tariff act, and that if such an article be found, one which answers the call of similitude in material, quality, or use, the inquiry ends and no inquiry will be made

as to whether an article falling within a general designation provided in another paragraph will bear a closer similitude in quality or texture. On the other hand, the Government contends that the similitude clause applies to the article which it most resembles, whether such article to which the resemblance is claimed is enumerated *eo nomine* or comes under a general classification. The case of Robins *v.* United States (1 Ct. Cust. Appls., 252; T. D. 31278) bears upon the question and answers in part the contention of the importer. In that case balata belting was assessed for duty under a paragraph providing for manufactures of india rubber, or of which india rubber is the component material of chief value. It was claimed to be dutiable as band or belting rubber provided for in paragraph 438 of the act of 1897. Undoubtedly there was a similitude in use between balata belting and band or belting leather. But the court ruled in that case that there was a similitude in material, quality, and texture between india rubber and balata more marked than its similitude of use, and that therefore the balata belting was properly assessed in similitude to india rubber. It was said, citing Arthur *v.* Sussfeld (96 U. S., 128), Arthur *v.* Butterfield (125 U. S., 70), and Hartranft *v.* Meyer (135 U. S., 237), that the designation of an article as a manufacture of a particular specified material is a sufficient designation for tariff purposes, and that any article manufactured from such material is an article enumerated within the meaning of the similitude clause of paragraph 7 of the tariff act of 1897.

It appears to be settled that an article not named *eo nomine* may, if within a class designated generally, be compared with an importation to determine the question of similitude between the two. The recent case of United States *v.* Eckstein (T. D. 32090) is the latest instance of the application of this rule by the Supreme Court. In considering whether artificial horsehair is like cotton yarn in use, the court said:

Paragraph 302 of the act covers cotton yarns regardless of their use. Thus, yarns have four broad general uses, viz, knitting, weaving, sewing, and braiding, and manifestly a given cotton yarn could not be used for all the purposes of all cotton yarns. In the group of hard-twisted yarns is found cotton yarn, used in the production of hat braids, and in the same commercial group appears the merchandise in suit. One of the many varieties of cotton yarn used in making hat braids is what is known as glazed or polished cotton yarn. It is asserted and not denied that such merchandise has been uniformly classified for customs purposes as a cotton yarn, and, so far from being a highly specialized and unusual commodity, it has been an important article of commerce for at least 30 years. However, while imitation horsehair is generally used in the production of hat braids and is used interchangeably with glazed cotton yarn for such purpose, it has, in common with cotton yarns, other uses, which are referred to in the opinion of the Circuit Court of Appeals.

Upon the whole, we are of opinion that both as to material and use there is a substantial statutory similitude between cotton yarns enumerated in paragraph 302 and the merchandise in question, both as to material and use.

It being thus the settled rule that to determine similitude, either of material, quality, texture, or use, comparison may be made with an article which in any of these particulars falls within the class named, it would seem clear that both as to texture and use the article here involved may be compared with artificial horsehair hats. Does the fact that other hats are named *eo nomine* change this rule? We think not. By the very terms of the similitude clause an importation not named is to be assessed at the same rate as the article that is named either generally or particularly *which it, the imported article, most· resembles.* The case of Paterson *v.* United States (166 Fed. Rep., 733), cited by the importer, does not, in our opinion, state the correct rule. The discussion of that case appearing in the opinion of Martin, *J.,* in the case of United States *v.* Cochran (T. D. 32349) is not repeated.

As we find that both as to texture and use these hats of natural horsehair most resemble hats of artificial horsehair, the decision of the Board of General Appraisers should be reversed and the classification made by the collector *affirmed.*