ZIMMERMANN & MEYER *et als.* *v.* UNITED STATES (No. 1248).[1]

1. STARE DECISIS.

After the elimination of the "wool" theory, horsehair braids and hats were always assessed under the act of 1897 by similitude with silk braids and hats, except for an interval when this practice was inhibited by an erroneous rule of construction that was subsequently expressly disapproved by this court.

2. HORSEHAIR BRAIDS AND HATS.

Upon the present record it is held that the importers failed to sustain the burden of proof in showing the assessment was wrong and that the importation was properly held dutiable by similitude to silk braids and silk hats under paragraph 390, tariff act of 1897.

United States Court of Customs Appeals, January 22, 1914.

APPEAL from Board of United States General Appraisers, Abstract 33264 (T. D. 33668).

[Affirmed.]

*Comstock & Washburn (George J. Puckhafer* on the brief) for appellants.
*William L. Wemple,* Assistant Attorney General (*Martin T. Baldwin,* special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise now in question consists of hat braids made of real horsehair and women's untrimmed hats made from such braids. The articles were imported under the tariff act of 1897, and the collector assessed duty thereon at the rate of 60 per cent ad valorem by similitude to silk braids and silk hats, respectively, under paragraph 390 of that act.

---

[1] Reported in T. D. 34137 (26 Treas. Dec., 165).

The importers protested, claiming assessment of the braids at 20 per cent ad valorem and the hats at 35 per cent ad valorem by similitude to straw braids and straw hats, respectively, under paragraph 409 of the same act. An alternative claim was made in the protest that the hats were dutiable at 50 per cent ad valorem by similitude to cotton wearing apparel under paragraph 314 of the act.

The protest was submitted upon evidence to the Board of General Appraisers and was overruled, from which decision the importers prosecute their present appeal.

The following relevant provisions of the tariff act of 1897 are copied for reference:

SEC. 7. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied, to any article enumerated in this act as chargeable with duty, shall pay the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; and if any nonenumerated article equally resembles two or more enumerated articles on which different rates of duty are chargeable, there shall be levied on such nonenumerated article the same rate of duty as is chargeable on the article which it resembles paying the highest rate of duty; * * *.

Par. 390. Braids, * * * and articles of wearing apparel of every description, made up or manufactured in whole or in part * * *; made of silk, or of which silk is the component material of chief value * * *, sixty per centum ad valorem.

Par. 409. Braids, * * * composed wholly of straw, chip, grass, * * * suitable for making or ornamenting hats * * *; if bleached, dyed, colored, or stained, twenty per centum ad valorem; hats, * * * composed of straw, chip, grass, * * * whether wholly or partly manufactured, but not trimmed, thirty-five per centum ad valorem. * * * But the terms "grass" and "straw" shall be understood to mean these substances in their natural form and structure, and not the separated fiber thereof.

Par. 314. Articles of wearing apparel of every description, * * * composed of cotton, * * * made up or manufactured, wholly or in part, * * * fifty per centum ad valorem.

The tariff act of 1897 contained no enumeration of horsehair braids or horsehair hats; therefore the importations must either be assessed under the similitude rule or be treated as nonenumerated manufactured articles. It is clear, however, that the horsehair braids and hats bear a substantial resemblance in tariff particulars to braids and hats made either of silk, straw, or cotton; therefore the nonenumerated provision can not apply. The sole question, therefore, is whether the importations most resemble braids and hats of silk, straw, or cotton, in respect to material, quality, texture, and use.

The matter of the dutiable classification of horsehair braids and hats under the tariff act of 1897 has been the subject of an unusual number of decisions. It seems that under the act of 1897 the collector first classified and assessed horsehair braids and hats as articles

"composed of wool," by virtue of paragraph 383 of that act, which provided that the word "wool," when used in connection with a manufactured article of which it is a component material, "shall be held to include wool or *hair* of the sheep, camel, goat, alpaca, *or other animal.*" The collector was sustained in this construction by the Board of General Appraisers in the Donat case (T. D. 22843) (Somerville, G. A., dissenting). The importers, however, appealed from the board's decision in the foregoing case, claiming that the horsehair braids in question were not enumerated under the wool provisions, but were nonenumerated articles dutiable by similitude with silk braids under paragraph 390 of the act of 1897. It may be remarked that this is the identical claim made by the Government in the present case. Upon this appeal the Circuit Court, Southern District of New York, sustained the foregoing claim of the importers, holding that under the act of 1897 horsehair braids were not dutiable as "articles composed of wool," but were dutiable by similitude with silk braids under paragraph 390 of the act. The Government expressly acquiesced in this decision. Donat *v.* United States, decided June 4, 1903 (134 Fed., 1023), more fully reported as T. D. 25113. See also *In re* Rheims (T. D. 25109); *In re* Rosenberg (T. D. 25022).

After the publication of the Circuit Court's decision in the Donat case, *supra*, the board continuously held that horsehair braids and horsehair hats were dutiable under the act of 1897 by similitude with silk braids and silk hats. These several decisions were rested by the board in part upon the superior resemblance of the horsehair articles to the silk articles, and also in part upon the rule that the higher rate of duty should control in cases of equal similitudes. In the Herrman case (T. D. 26150), hats composed of horsehair and straw, horsehair being chief value, were held by the board to be dutiable by similitude with silk hats under the same act; and in the Wanamaker case (T. D. 28217), horsehair hats were held by the board to be dutiable by similitude with silk hats as against hats of straw. In the case last cited, Fischer, G. A., speaking for the board, said:

From the trend of the testimony submitted, it is evident that counsel for the importer was endeavoring to show that horsehair hats were properly dutiable by similitude to straw hats, but in our opinion the attempt is a failure. His chief reliance appears to be on the alleged circumstance that horsehair hats are worn in the same season as straw hats, to wit, the summer; but aside from the fact that the testimony does not establish with certainty that such is the case, it is in evidence that some hats—lace hats, for instance—are worn both in summer and winter, and that horsehair hats are not worn exclusively in the summer season.

Another point that is strongly, not to say conclusively, against the contention of the importer that these hats are similar for duty purposes to straw hats, is that they do not resemble such hats in the statutory particulars of material, quality, and texture. Paragraph 409 expressly provides that the terms "grass" and "straw" as used therein "shall be understood to mean these substances in their natural form and structure, and not the separated fiber thereof." Counsel for the Government intro-

duced in evidence illustrative samples of straw braid, such as is provided for in paragraph 409, and its entire dissimilarity to the material of which these hats are composed is seen at a glance. If these hats were in fact straw, they would not be dutiable under paragraph 409, for straw in such shape would be the separated fiber of straw, and hence excluded by the very terms of paragraph 409 from classification thereunder. If, then, hats that are made of the separated fiber of straw can not be classified under that paragraph for the reason that they are expressly excluded therefrom, how can it be contended that hats whose only resemblance to any kind of straw hats is to those made of the separated straw fiber are dutiable under that paragraph? Other considerations that suggest themselves are that real horsehair is, of course, an animal product, while the substances provided for in paragraph 409 are all vegetable, thus differing essentially in material, and also that hats of this character are, as shown by the evidence of one of the importer's witnesses, more expensive than either cotton or straw hats.

Afterwards this subject came again before the board and courts in the cases of United States *v.* Rheims (175 Fed., 778; T. D. 30226) and Paterson *v.* United States (166 Fed., 733; T. D. 29377). In those cases the Circuit Court of Appeals for the Second Circuit reversed the decision of the board in the Paterson case, Abstract 16500 (T. D. 28384), and overruled the foregoing line of decisions of the board, the court holding that horsehair braids and hats were dutiable by similitude with straw braids and hats under paragraph 409 of the tariff act of 1897, rather than by similitude with silk braids and hats under paragraph 390 of that act. The court in its opinion conceded that horsehair hat braids, in point of material, texture, quality, and use resembled silk hat braids more nearly than straw hat braids; it based its decision, however, solely upon the fact that straw hat braids were specifically enumerated in the act of 1897, while the silk articles were given only a generic enumeration therein, namely, as "silk braids," and were not specifically enumerated therein as "silk *hat* braids." This reasoning resulted in assessing the importations not according to their actual degrees of resemblance to the several enumerated articles in question, but rather according to the relative degrees of specificity with which the enumerated articles themselves were severally named in the tariff act.

Afterwards, however, this court refused to follow the reasoning of the Circuit Court of Appeals in the cases just cited. See United States *v.* Cochran (3 Ct. Cust. Appls., 57; T. D. 32349) and United States *v.* Buss & Warner (3 Ct. Cust. Appls., 87; T. D. 32357). In the last cited case, presiding Judge Montgomery, speaking for this court, said:

By the very terms of the similitude clause an importation not named is to be assessed at the same rate as the article that is named either generally or particularly *which it, the imported article, most resembles.* The case of Paterson *v.* United States (166 Fed. Rep., 733), cited by the importer, does not, in our opinion, state the correct rule.

Since the publication of the foregoing decisions of this court the board has followed its original line of decisions and held that under the tariff act of 1897 horsehair braids and hats were dutiable by similitude with silk braids and hats rather than with straw braids and hats. See Joseph's case (T. D. 32617). During the interval

which ensued between the decisions of the Circuit Court of Appeals in the Rheims and Paterson cases and the decisions of this court in the Cochran and Buss & Warner cases the board entered numerous decisions in accordance with the principle, afterwards overruled, announced in the Rheims and Paterson cases. Zimmermann case (T. D. 29687); Dearbergh Bros. case, Abstract 21272 (T. D. 29790).

The foregoing review of the reported cases discloses the fact that after the elimination of the "wool" theory, horsehair braids and hats were always assessed under the act of 1897 by similitude with silk braids and hats, except for an interval when this practice was inhibited by the erroneous rule of construction announced in the Paterson case, which rule was afterwards expressly disapproved by this court. This recital seems to answer the claim of the importers that the present case should be governed by the decisions announced during that interval, under the rule of *stare decisis*, for it clearly appears that all the time horsehair braids and hats were held to assimilate in fact to silk braids and hats and their assessment accordingly was only suspended for a time by the promulgation of an erroneous rule of construction, which had no relation to the actual resemblance of the articles in question.

Coming now to the present case, the record presents a single question of fact, namely, whether the imported horsehair braids and hats actually resemble silk braids and hats either more than, or as much as, straw or cotton braids and hats in respect to material, quality, texture, and use. If the horsehair articles most resemble the silk articles in the statutory particulars, they should be assessed by similitude with them because of this superior resemblance. Moreover, if the horsehair articles equally resemble the silk and straw or the silk and cotton articles, still they should be assessed by similitude with silk rather than with straw or cotton, because the silk rate of duty was the higher one under the act and therefore should be applied to the importations.

Various claims are made by the respective parties upon the question of actual resemblance between the horsehair articles and the several competing standards. On the one hand, it is claimed by the Government that horsehair, like silk, is of animal origin and has many characteristics in common with silk; that both are round, tough filaments of enduring animal material, while straw is flat, flimsy, brittle, and of vegetable origin and material. It is also claimed by the Government that the horsehair articles are similar to silk articles in appearance and use. On the other hand, it is especially urged by the importers that horsehair hats, unlike silk hats, are most used for summer wear and in that particular best assimilate to straw or cotton hats.

It is difficult to weigh with accuracy or certainty the relative values of these conflicting claims. At the trial before the board the burden of proof was upon the importers, and it became their duty to sustain

their claim by the proofs. The testimony, however, as it appears in the record is meager and unsatisfactory. The question in issue relates chiefly to the alleged similarity of horsehair braids and hats with straw braids and hats; yet no straw braids or hats were placed in evidence as illustrative exhibits for actual comparison. It may be said that the materials, quality, texture, and uses of straw braids and hats are all within common knowledge and therefore that such samples were unnecessary. To some extent this is doubtless true, but common knowledge alone without the aid of samples is hardly sufficient for a comparison of the horsehair importations upon the one hand with competing silk and straw braids and women's silk and straw hat bodies upon the other hand. This failure of straw samples becomes the more important because of the statutory provision that the term "straw" shall be understood to apply to that substance in its natural form and structure only, and not to the separated fiber thereof. A reference to the board's decisions in the Wanamaker case (T. D. 28217), above copied, and in the Paterson case, Abstract 16500 (T. D. 28384), above cited, discloses that this point was considered by the board upon the actual samples of straw braids and hats then before it to be a decisive one, and the decisions entered upon the evidence in those cases were largely rested upon it. Common knowledge alone hardly furnishes sufficient authority for a decision upon such an issue of fact.

It should also be remembered that the collector's assessment must be sustained in case the horsehair braids and hats equally resemble both silk, straw, and cotton braids and hats, because of the rule applying the higher rate of duty in such a case.

The importers seem to place their real reliance upon the claim that horsehair hats are chiefly or always worn in spring or summer, and that silk hats are not worn in those seasons. This claim, however, is left in a state of uncertainty by the testimony of the Government's witness Morant. That witness testified that silk braids have long been imported into this country for the manufacture of women's summer hats. A sample of such braids was placed in evidence and corresponds with the witness' statements. It thus appears that the chief claim of the importers is made uncertain by the contradictory evidence in the record, for women's silk hats are worn to some extent in the summer and it is probable that women's horsehair hats are worn to some extent in the winter. In respect to the alternative claim relating to the similitude of the horsehair articles to cotton articles, it may be noted that under the act of 1897 cotton and silk hat braids bore the same rate of duty; and as to hat bodies of cotton the record is not sufficiently clear to require a reversal.

Upon the present record, therefore, the court holds that the importers have failed to sustain the burden of proof which was cast upon them by the issue, and the decision of the board is *affirmed*.