## UNITED STATES *v.* CONKEY & CO. (No. 2454)[1]

1. CONSTRUCTION, PARAGRAPH 706, TARIFF ACT OF 1922—"PRESERVED"—
FREEZING.

It is the common acceptance of the word *"preserved,"* when applied to meat, that it has been so processed that its preservation is of permanent character. This court, and other courts, have frequently held that articles of importation, referred to in the tariff statutes as preserved, have had something more done to them to preserve them than merely to arrest change and decomposition while in transit. So frozen meat is not "preserved" within the meaning of that term in paragraph 706, tariff act of 1922.

2. CONSTRUCTION, PARAGRAPH 706, TARIFF ACT of 1922—"PREPARED"—
FREEZING.

When used in the tariff acts, the word "prepared" is sometimes used synonymously with preserved, but, in a general sense, it implies that the fresh or raw material has undergone certain mechanical changes, such as cutting, slicing, grinding, mashing, mixing, etc., and usually implies that it has been advanced toward the condition in which it is used, and frequently such preparation either aids or accomplishes preservation. Frozen meat can not be regarded as "prepared," within the meaning of that word in paragraph 706, tariff act of 1922.

3. SIMILITUDE.

The doctrine of similitude can be evoked only for nonenumerated articles. For similitude to apply, the articles must not be of identically the same, but of substantially similar, material, use or texture.

4. FROZEN LAMBS—FRESH MEAT.

Frozen meat, being shown to be different, actually and commercially, from fresh meat, is not so classifiable directly; but, being shown to be similar in material, qualities, and use, is so classifiable by virtue of the similitude paragraph 1460, of the act of 1922. Frozen lambs are dutiable by similitude, as "fresh lamb," under paragraph 702, rather than as "Meats, fresh, prepared, or preserved," under paragraph 706, or nonenumerated merchandise under paragraph 1459.

## United States Court of Customs Appeals, March 23, 1925

APPEAL from Board of United States General Appraisers, G. A. 8827 (T. D. 40305)

[Reversed.]

*William W. Hoppin*, Assistant Attorney General (*Ralph Folks*, special attorney, of counsel), for the United States.

*Waterhouse & Lockett* (*William E. Waterhouse* of counsel) for appellees.

[Oral argument January 15, 1925, by Mr. Hoppin and Mr. Lockett]

Before Graham, Presiding Judge, and Smith, Bland, and Hatfield, Associate Judges; Barber, Associate Judge, participating in the decision by agreement of counsel

Bland, Judge, delivered the opinion of the court:

This appeal involves the classification of frozen lamb imported from the Argentine.

Duty was assessed by the collector at the port of Boston at 4 cents per pound, under paragraph 702 of the tariff act of 1922, as "fresh lamb." The importers protested, claiming that it was dutiable at 20 per cent ad valorem under paragraph 706 of the same act, as "meats prepared, or preserved." The importers alternatively claimed that the merchandise was dutiable under paragraph 1459 of said act at 10 per cent ad valorem, or, if not so, that it was dutiable under the same paragraph at 20 per cent ad valorem. The importers also claimed that it was dutiable under paragraph 706 or paragraph 1459, by virtue of the similitude paragraph, 1460.

The Board of General Appraisers sustained the protest and held that the merchandise was dutiable as "meats preserved." From this decision the Government appeals to this court.

The pertinent parts of paragraphs 702 and 706 are as follows:

Par. 702. Sheep and goats, $2 per head; fresh mutton and goat meat, 2½ cents per pound; fresh lamb, 4 cents per pound.

Par. 706. Meats, fresh, prepared, or preserved, not specially provided for, 20 per centum ad valorem. * * *

The appraiser's report states:

The merchandise subject of protest consists of frozen lambs, so frozen to preserve them while in transit from the Argentine Republic to the United States.

There is no eo nomine provision in the act of 1922 for frozen meats. The emergency tariff law of 1921 provided for "fresh or frozen beef, veal, mutton, lamb, and pork." It would seem to be clear that Congress intended the importation to come within paragraph 702 or paragraph 706. Since frozen meat is such a well-known article in commerce and is so often the subject of importation, Congress could not reasonably have intended that it should be classified under the catchall provisions of paragraph 1459.

An examination of the evidence submitted by the importers is sufficient to convince this court that in the trade, at least in that part of the trade with which the witnesses were familiar, frozen lamb differed from fresh lamb in material, texture, and quality, and that frozen lamb would not be a good delivery for fresh lamb. It is clear that frozen lamb, at different periods, covered by the testimony, sold for 3 cents per pound less than fresh lamb.

The testimony in the case discloses that after the lamb is killed in the Argentine, and as soon as the animal heat leaves the carcass it

is frozen and kept at about a zero temperature while in the Argentine and during transportation to the United States; that upon arrival here it is carefully kept at this low temperature until it is ready to go into the market, when it is gradually thawed out and sold as frozen lamb and not as fresh lamb. Witnesses testified that when the lambs are thawed a bloody or discolored liquid drips from the meat; that the freezing of the carcass bursts the tissues and that when the meat is cooked some of the natural flavors are lost and that there are more juices, or gravy, from frozen lamb than from fresh lamb; that the only way they can get fresh meat from the Argentine, on account of the distance, is to freeze it, which preserves it for transportation; that fresh lamb is shipped across the country in the United States in refrigerator cars, without freezing, at a temperature just above freezing; that meat so refrigerated, if kept too long, will deteriorate in value, turn dark, and spoil. Meat when frozen, and kept frozen, will keep in substantially the same condition it was at the time it was frozen, for an indefinite period of time.

We think the importers, by the evidence in this case have clearly established that, in the trade, frozen lamb is not fresh lamb. We do not think the evidence shows that it is known either commonly or in the trade as prepared or preserved meat. It is admitted by the importers and the Government that it is not fresh meat within the meaning of the words used in paragraph 706. We do not believe it is prepared or preserved meat either under the general acceptance of the use of those terms, or under the decisions of this and other courts.

The definition of "preserve," which we think applicable to this case, is:

To keep from decay, to keep from physical or chemical change or decay: To prepare by boiling, salting, or pickling, so as to prevent its decomposition or fermentation.—New English Dictionary.

It is conceded that freezing fresh meat keeps it from decay and keeps it from physical and chemical change, and prevents decomposition and fermentation, but not all meats that are prevented from decomposing are preserved within the meaning of that term. So-called fresh lamb sold on the markets in the United States is preserved from decomposition, temporarily at least, by being kept in refrigeration at a temperature above freezing. This low temperature preserves the meat for a given period as satisfactorily as does freezing, and yet it is not contended that meat unfrozen that has been preserved by low temperature is preserved meat. The difference between frozen meat and meat preserved by keeping at a low temperature above freezing as far as preservation goes is one of degree. This court, and other courts, have frequently held that articles of importation, referred to in the tariff statutes as preserved, have had

something more done to them to preserve them than merely to arrest change and decomposition while in transit.—Hansen *v.* United States (1 Ct. Cust. Appls. 1; T. D. 30769); Kwong Yuen Shing *v.* United States (1 Ct. Cust. Appls. 16; T. D. 30774); Causse Mfg. Co. *v.* United States (151 Fed. 4); Moscahlades Bros. *v.* United States (6 Ct. Cust. Appls. 399; T. D. 35973).

"Prepared, or preserved," as used in the tariff acts ordinarily involves cooking, salting, drying, smoking, curing, or the application of some method or process whereby the fresh or natural condition of the article is so changed as to be more or less a permanent preservation.—Habicht *v.* United States (1 Ct. Cust. Appls. 10; T. D. 30772). When used in the tariff sense, the word "prepared" is sometimes used synonymously with preserved, but, in a general sense, it implies that the fresh or raw material has undergone certain mechanical changes, such as cutting, slicing, grinding, mashing, mixing, etc., and usually implies that it has been advanced toward the condition in which it is used, and frequently such preparation either aids or accomplishes preservation.

We observe little in this record that would indicate any serious contention or belief that the meat in controversy was prepared meat. The Board of General Appraisers held:

> We are of the opinion that meat which has been frozen at a temperature of zero and carefully maintained in that condition can be held to be prepared within the meaning of this section, and also we are of the opinion that it would not do violence to the meaning of the expression to hold in a case like this that it is preserved. It is in a condition which preserved it indefinitely if the temperature remains sufficiently stable. That it has to be carefully preserved at that point we do not think militates in any way against the fact of preservation. In our judgment it is as much preserved as though it were pickled or salted.

> We therefore sustain the protest and hold the merchandise dutiable as meats preserved.

It will be noted that the board definitely held that the meat was preserved, after having indicated that it was clearer to it that it was prepared.

It is the common acceptance of the word "*preserved,*" when applied to meat, that it has been so processed that its preservation is of permanent character. The importation was frozen for transportation purposes, and is not sold to the consumer until it is thawed out and is put in condition to take the place, as nearly as possible, of the lamb which has not been frozen. It may be inferred from the record that when thawed out it is used for no purpose other than that to which the unfrozen product is adapted. When the carcass of the frozen lamb is thawed out, it takes its place in the market side by side with the unfrozen product. That it competes in sale and use seems to be evident. One may be more desirable than the other, and, we think, this is made clear by the record. There is a general prejudice against

most articles which have been frozen, or even preserved, as compared with the fresh article, ofttimes due to the fact that the preservation has not been completed, or that the preservation began after decomposition began.

We think frozen lamb and fresh lamb are so similar in material, quality, texture, and use that under paragraph 1460, by similitude, it may be classified as fresh lamb under paragraph 702. The doctrine of similitude can be evoked only for nonenumerated articles.—United States v. Stouffer Co. (3 Ct. Cust. Appls. 67; T. D. 32351). Under the proof in this case the importation is nonenumerated. For similitude to apply it is not necessary that the articles be of identically the same material, or of the same use, or of the same texture. It is only required that they be substantially similar.—Isler & Guye v. United States (11 Ct. Cust. Appls. 340; T. D. 39146). If they were of the same material and the same texture, quality and use, they would be the same and would, therefore, be enumerated.

In the United States v. Buss and Warner (3 Ct. Cust. Appls. 87; T. D. 32357), the rule of similitude was laid down as follows:

By the very terms of the similitude clause an importation not named is to be assessed at the same rate as the article that is named either generally or particularly which it, the imported article, most resembles.

In the case at bar the doctrine of similitude is claimed by both the Government and the importers.

Since the article is not eo nomine provided for, and since it is clear that it can not be classified under section 1459, we are called upon to apply the doctrine of similitude to the two paragraphs in question. In applying the doctrine laid down in the Buss and Warner case, supra, and numerous other cases, we are led to inquire, as between fresh lamb and prepared or preserved meat, which does the imported article most resemble? Clearly it most resembles fresh lamb. Fresh lamb, under paragraph 702, is more specific than fresh meat under paragraph 706, and therefore the imported frozen merchandise should be classified, by similitude, as fresh lamb. In so deciding we are not unmindful of the very clear difference between frozen lamb and fresh lamb, but we are also especially impressed with the similarity in material, quality, texture, and use. Furthermore, since the tariff act of 1922 was designed for protection as well as for revenue purposes, we can not overlook the fact that Congress would probably have in mind the protection of fresh lamb produced in this country by imposing the same duty upon frozen lamb from cheaper producing countries. This seems especially true in view of the consideration that the frozen product, when marketed or used, competes directly with the home-produced unfrozen article.

The judgment of the Board of General Appraisers is reversed.