C. J. TOWER & SONS *v.* UNITED STATES (No. 3360)[1]

United States Court of Customs and Patent Appeals, November 3, 1930

*Curtis E. Loehle* for appellant.

*Charles D. Lawrence*, Assistant Attorney General (*Thomas J. Canty* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument October 16, 1930, by Mr. Loehle and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The decision of this case necessitates a consideration of three paragraphs of the Tariff Act of 1922, which follow:

PAR. 701. Cattle, weighing less than one thousand and fifty pounds each, 1½ cents per pound; weighing one thousand and fifty pounds each or more, 2 cents per pound; fresh beef and veal, 3 cents per pound; tallow, one-half of 1 cent per pound; oleo oil and oleo stearin, 1 cent per pound.

PAR. 706. Meats, fresh, prepared, or preserved, not specially provided for, 20 per centum ad valorem:  *  *  *

---

[1] T. D. 44362.

PAR. 1459. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

The importation involved consists of 416 bundles of boneless bull meat. It was classified as "fresh beef," at 3 cents per pound, under paragraph 701, *supra*, and is claimed dutiable as "meats * * * prepared * * * not specially provided for," under paragraph 706, *supra*, or at 10 or 20 per centum ad valorem, under paragraph 1459, *supra*.

The United States Customs Court held that it was fresh beef, dutiable, directly, under the fresh beef provision of paragraph 701, *supra*, and overruled the protest. From this judgment appellant has appealed to this court.

At the trial and in the brief appellant's counsel made the following concession:

At the outset, and for the purpose of reducing the issue to its simplest form, appellant concedes that the fact this bull meat was imported in a frozen condition has no bearing on the classification claimed. In other words, appellant does not rely upon or contend that the freezing was such a process of preservation as would take the bull meat out of the provision for "fresh meat" in paragraph 701.

We think appellant by the above concession meant nothing more than to admit that freezing did not constitute preservation. This concession was probably made in view of this court's decision in the case of *United States* v. *Conkey & Co.*, 12 Ct. Cust. Appls. 552, T. D. 40783.

Appellant's attorney argues that he has shown that commercially the frozen boneless bull meat, in pieces, is not the fresh beef provided for in paragraph 701, but, if it is so provided for, that "meats * * * prepared * * * not specially provided for," as found in paragraph 706, more specifically describes the merchandise than the unlimited provision for "fresh beef."

We do not think it necessary to decide the question of specificity raised here by appellant. Appellant has shown by a fair preponderance of the evidence that fresh beef in the commercial sense is a product entirely different from the frozen boneless bull meat at bar. In *United States* v. *Conkey & Co.*, *supra*, this court had before it frozen lamb, assessed as fresh lamb under paragraph 702 of the Tariff Act of 1922, and claimed to be dutiable as "meats * * * preserved" under paragraph 706 of the same act. This court held, under the proof in that case, that frozen lamb was not fresh lamb. We further said:

* * * Since frozen meat is such a well-known article in commerce and is so often the subject of importation, Congress could not reasonably have intended that it should be classified under the catchall provisions of paragraph 1459.

We can not see why the same language is not applicable here. The proof in this case sustains the view which this court entertained in the *Conkey* case, and is to the effect that frozen boneless bull meat, cut into pieces, is not fresh beef. Agreeable to the holding in the *Conkey* case, we conclude also that Congress must have contemplated the classification of the instant importation under one or the other of the first two competing paragraphs under consideration rather than to relegate the same to the nonenumerated paragraph.

The question now occurs as to whether the merchandise is dutiable under any of the provisions in paragraph 706, which provides for three kinds of meat, "fresh, prepared or preserved, not specially provided for." If it be either prepared meat or preserved meat, it is not necessary for us to pass upon the question as to whether it is fresh meat, since it would take the same rate of duty under the same paragraph. If it is dutiable under any of the provisions of paragraph 706, the question of similitude need not be considered.

Under the authority of the *Conkey & Co.* case, we hold that the merchandise at bar is not preserved.

As bearing upon the issue as to whether or not the instant importation is "prepared" meat within the meaning of the language used in paragraph 706, attention is called to the language of this court in the *Conkey* case, as follows:

When used in the tariff sense, the word "prepared" is sometimes used synonymously with preserved, but, in a general sense, it implies that the fresh or raw material has undergone certain mechanical changes, such as cutting, slicing, grinding, mashing, mixing, etc., and usually implies that it has been advanced toward the condition in which it is used, and frequently such preparation either aids or accomplishes preservation.

In that case the merchandise had not been prepared because it was in the carcass and had not been advanced in any way from its condition as fresh lamb or frozen lamb.

In *Stone & Downer Co.* v. *United States*, 17 C. C. P. A. (Customs) 34, T. D. 43323, this court had before it fresh dates, pitted. We held them to be dates, prepared or preserved in any manner, and said:

The word "prepared," in a tariff sense, means, ordinarily, that a commodity has been so processed as to be advanced in condition and made more valuable for its intended use. *United States* v. *Conkey & Co.*, 12 Ct. Cust. Appls. 552, T. D. 40783.

The involved merchandise was imported to be sold for grinding purposes. All dates are not so used. Whether this is a major or a minor use does not appear. Generally "grinding" is a process of preparation. *United States* v. *Conkey & Co.*, *supra*. If the provision for dates "prepared or preserved in any manner" was intended by the Congress to be limited to "glacéd and candied fruits," as argued by counsel for appellant, then dates ground into the form of meal or flour would be excluded from the provision. See *Stein, Hirsch & Co. et al.* v. *United States*, 6 Ct. Cust. Appls. 154, T. D. 35397, where it was held that "potato flour,"

obtained by reducing potatoes to that form by a process of drying and grinding, was dutiable as potatoes "prepared" under paragraph ·581, Tariff Act of 1913. If the Congress intended that the construction insisted upon by counsel for appellant should be placed upon paragraph 741, we feel confident that it would have used language consistent with such purpose. Of course, "pitted dates" are still dates. However, if the "pitting" process advances them in value and condition for their ultimate use, they are "prepared in any manner." This is not the pronouncement of a new principle. See *United States* v. *Weber*, 6 Ct. Cust. Appls. 234, T. D. 35469.

It has been conceded by the witness, Carl J. Braun, testifying for appellant, that the involved dates are to be used for "grinding purposes," and that pitted dates are more valuable for such purposes than dates unpitted. We conclude, therefore, that the dates have been "prepared * * * in any manner," and that they are dutiable as assessed by the collector.

We think this reasoning applies aptly to the facts at bar. The merchandise here, after butchering, has been ·changed in form and advanced toward sausage by having all sinews, fat, kidneys, tendons, and bones removed by skilled workmen, and then cut into parts which are evidently conveniently shaped and sized to be packed in boxes which form a cake of meat, when frozen, weighing about 100 pounds. Before going to the freezing room, after it is cut and treated as above indicated, 100 pounds of the same is covered with cheesecloth and burlap. After freezing, and before shipment, the box is broken down and removed from the frozen cake.

It is impossible to escape the conclusion that the treatment of this meat is a process of preparation for its eventual use as sausage. · The testimony is positive that it is used for no other ·purpose and is known as bologna bull meat.

The protest should have been sustained, and the judgment of the United States Customs Court is *reversed* and the case *remanded*.