C. J. TOWER & SONS *v.* UNITED STATES (No. 4118) [1]

United States Court of Customs and Patent Appeals, March 7, 1938

*Barnes, Richardson & Colburn (Joseph Schwartz* of counsel) for appellant.
*Joseph R. Jackson,* Assistant Attorney General (*Richard E. FitzGibbon,* special attorney, of counsel) for the United States.

[Oral argument February 9, 1938, by Mr. Richardson and Mr. FitzGibbon]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges [2]

BLAND, Judge, delivered the opinion of the court:

The merchandise involved in this appeal was imported at the port of Buffalo, N. Y., and was, by the appraiser, described as ground oat groats. It was classified by the collector as a nonenumerated, manu-

---

[1] T. D. 49486.

[2] JACKSON, Judge, took no part in the consideration or decision of this case.

factured article, not specially provided for, and assessed with duty at 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930.

The importer protested the said classification and assessment with duty and claimed, *inter alia*, that the merchandise was classifiable under paragraph 730, by similitude, and dutiable at 10 per centum ad valorem.

The United States Customs Court, Third Division, overruled the protests of the appellant, stating that it did so without affirming the action of the collector, and held that the merchandise should have been assessed for duty under paragraph 726 as oatmeal, oat grits or similar oat products.

From the judgment of the trial court, appellant has here appealed.

The pertinent provisions of the tariff act read as follows:

PAR. 726. Oats, hulled or unhulled, 16 cents per bushel of thirty-two pounds; unhulled ground oats, 45 cents per one hundred pounds; oatmeal, rolled oats, oat grits, and similar oat products, 80 cents per one hundred pounds.

PAR. 730. Bran, shorts, by-product feeds obtained in milling wheat or other cereals, 10 per centum ad valorem; hulls of oats, barley, buckwheat, or other grains, ground or unground, 10 cents per one hundred pounds; dried beet pulp, malt sprouts, and brewers' grains, $5 per ton; soy bean oil cake and soy bean oil-cake meal, three-tenths of 1 cent per pound; all other vegetable oil cake and oil-cake meal, not specially provided for, three-tenths of 1 cent per pound; mixed feeds, consisting of an admixture of grains or grain products with oil cake, oil-cake meal, molasses, or other feedstuffs, 10 per centum ad valorem.

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 1559. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned   *   *   *.

Appellant in this court relies solely upon its claim that the merchandise is dutiable under paragraph 730 by virtue of the similitude provision contained in paragraph 1559.

The imported merchandise, according to the testimony of the Canadian manufacturer, is intended for stock feed, or for use in the preparation of stock feed.   It is manufactured from what is characterized as "feeding oats," and by "feeding oats" the record shows is meant a grain product, consisting chiefly of oats, which contains too many foreign ingredients to be manufactured into human food.   The testimony shows that the oats, before being manufactured, contained a certain amount of barley, buckwheat, wheat, "wheat seeds," "straw, thistle tops" and dirt.

The mixture was first put through a hulling machine where most of the hulls of the oats were removed. Probably 8 or 10 per centum of the hulls were left in the mixture after hulling. The remaining oats (spoken of as oat groats), barley, wheat, wheat seeds, and other material, were all ground into a form somewhat resembling oatmeal suitable for human consumption. The record shows that the difference between feeding oats and those for human consumption depends much on the color, weight, and purity of the oats, and that the oats used in the manufacture of the imported merchandise were not such character of oats as would be used in making cereal foods such as oatmeal or oat grits for human consumption.

The witnesses were somewhat indefinite as to the percentages of barley, wheat, wheat seeds, and other matter which were in the mixture. They stated that the cereal used in making the imported article was regarded as feeding oats rather than as oats suitable for making products for human consumption, on account of the presence of foreign materials. It was also stated that in manufacturing the material there "were no pains taken with it to keep it clean that would conform with the pure food laws."

The Government contends here, as it did before the trial court, that the merchandise is dutiable as oat grits under paragraph 726. The trial court adopted the view of the Government, and held that the terms "grits" and "groats" were synonymous.

We are in disagreement with the trial court and counsel for the Government in the construction of paragraph 726 of the statute.

In order properly to understand the so-called "oats" paragraph (726), it is important, we think, to consider other cereal paragraphs closely associated therewith. In paragraph 732, provision is made for "Cereal breakfast foods, and similar cereal preparations * * * processed further than milling, and not specially provided for." These are made dutiable at 20 per centum ad valorem. The Tariff Commission in Summary of Tariff Information, 1929, at page 1222, points out that corn flakes and shredded wheat are cereal foods of this character. A great many cereal foods are not further processed than milling. In the barley paragraph (722), certain highly processed barleys are referred to as pearl barley, patent barley and barley flour. In paragraph 723 "buckwheat flour and grits or groats" are covered at one-half of 1 cent per pound; in paragraph 724 "Corn or maize, including cracked corn" are provided for at 25 cents per bushel of fifty-six pounds and further provision is made for "corn grits, meal, and flour, and similar products, 50 cents per one hundred pounds." Distinction is made there between corn grits and cracked corn. Certain products of rice are provided for in paragraph 727. In paragraph 729 is a provision for "Wheat, 42 cents per bushel of sixty pounds; wheat, unfit for human consumption, 10 per centum ad

valorem," and then follows a provision for "wheat flour, semolina, crushed or cracked wheat, and similar wheat products." Semolina is "coarsely ground and carefully purified milling products of wheat, especially hard wheat, used for macaroni and in cookery." (Webster's New International Dictionary.) In paragraph 730, set out *supra*, provision is made for bran, shorts, and by-product feeds. Paragraph 731 provides for screenings, scalpings, etc.

A consideration of the foregoing cereal provisions suggests that Congress desired to give certain ground cereal human food products therein contained a separate treatment from that given to cereal breakfast foods further processed than milling in paragraph 732. It is our view that the oatmeal, rolled oats, oat grits, and similar oat products, made dutiable at 80 cents per 100 pounds in paragraph 726, were those which were at least suitable for human consumption. The record shows that the ground material at bar does not fall within that class of merchandise.

As before stated, in the corn paragraph (724) there is a provision for grits. Corn grits are extensively used by the American people and are grains of corn which have been milled so as to remove the germ and a part of the outer hull and are then ground coarsely. Corn, cracked with the hull on and containing the germ, is a common poultry feed. Is it supposable that if corn should be ground into a meal, the same being unfit for human consumption, it could be regarded for tariff purposes as corn grits? The same reasoning, it seems, applies to oat grits. The mere fact that oats or certain kinds of oatmeal might be fed to stock and still be within the purview of paragraph 726, in our judgment does not require that we reach a different conclusion from that herein reached.

Moreover, it is our view that the language of paragraph 726 does not describe the merchandise at bar. There is no contention made by anyone in this case that the imported merchandise is oatmeal or rolled oats within the meaning of paragraph 726.

While some of the dictionary definitions cited by the trial court and the Government suggest that the terms "grits" and "groats" are synonymous, an examination of other authorities, the different paragraphs of the Tariff Act of 1930, and the instant record, shows that the terms should not always be considered as synonymous. In the buckwheat paragraph (723) is a provision for "buckwheat flour and grits or groats" but in the next paragraph where it refers to corn it speaks of "corn grits" and omits the term "groats" and in the oat paragraph the term "oat grits" is referred to. In the Encyclopaedia Britannica, 11th Edition, volume 19, at page 938, is the following:

Groats or grits are the whole kernel from which the husk is removed.

This would indicate that oat grits or oat groats are the whole kernels, not crushed. The witnesses in this case have referred to the

hulled oats before grinding as "groats." Webster's New International Dictionary defines "groats" as:

groats, * * * dried grain, as oats or wheat, hulled and broken or crushed; * * *.

In the Summary of Tariff Information, 1921, at page 694, in discussing oats, oatmeal, and rolled oats, the following was said:

*Important changes in classification.*—The words "hulled or unhulled" have been added [after "oats"]; provisions have also been added for unhulled ground oats, oat grits (Scotch oatmeal) and similar oat products.

In the same volume, at page 690, in discussing corn meal, the following was said:

*Production.*—By the modern roller process the grain is first freed of chaff and foreign material, then the germ and part of the outer hull are removed, and the degerminated material passes through a series of rollers and screens. *The various forms which the product may take as a result of the latter processes are fine flour, corn meal, fine grits, coarse grits, and hominy.* The separated germ is crushed for the oil, which has a large and increasing market (see par. 45), and the by-product, germ meal, is a valuable live-stock feed. Owing to its high content of oil, the presence of the germ in corn meal tends to make the product rancid. * * * [Italics except first word ours.]

The oats at bar are partly hulled and the mixed material is then ground. So, regardless of the conflict there may be in the different authorities as to the meaning of the terms "grits" and "groats," it would seem upon this record and in view of the above-quoted authorities, that we should not hold that a ground, mealy substance derived from grains such as are here involved, and containing impurities and not fit for human consumption, should be regarded as "oat grits" or oat products similar to those which are provided for in paragraph 726.

There is an aspect, we think, to this case broader than a mere consideration of the strict definition of the exact terms used in the statute. It is obvious that Congress intended to put a low rate of duty upon such products as might be suitable only for stock or poultry feed. This policy on the part of Congress for a great number of years has been too well understood to require further discussion here. It is hardly conceivable that it could have intended to have put such a high rate of duty as 40 per centum ad valorem (which the importer states the "80 cents per 100 pounds" in paragraph 726 amounts to) upon such a product as is at bar, place a duty of only 10 per centum on shorts, brans, and other by-product feeds, and at the same time impose no higher duty upon rolled oats and other carefully manufactured oat products for human consumption than is imposed in paragraph 726.

The merchandise involved is neither "oats, hulled or unhulled," nor unhulled ground oats. No one contends here that the merchandise falls within either of these provisions. Since we conclude, for the reasons heretofore stated, that the merchandise at bar is not

oatmeal, rolled oats, oat grits, or a similar oat product, it follows that the same is not properly dutiable under said paragraph 726.

We are in disagreement with appellant's contention that the merchandise should take a 10 per centum ad valorem duty under paragraph 730 by similitude. Appellant argues that, under the mandate of paragraph 1559, since the imported product is not enumerated, we must classify the same by similitude before relegating it to the nonenumerated manufactured article paragraph. This court has, on many occasions, in passing upon the classification of merchandise, which was not enumerated in the tariff acts, found it similar either in material, quality, texture or use to some article which was enumerated, and sanctioned the classification of the nonenumerated article with the enumerated one. Appellant has pointed out that this court, in cases which appellant cites, has held that artificial silk was dutiable as wearing apparel in chief value of cotton or other vegetable fiber; that balata belting was dutiable as manufactures of India rubber; that goose skins with the down on from which the feathers had been plucked were dutiable as furs; that imitation horsehair hats were dutiable as cotton wearing apparel; that frozen egg yolks and egg whites were dutiable as eggs; that sausages of blood were held dutiable as prepared meats; and that dried flowers were held dutiable as cut flowers. To this might be added many more instances where the mandate of the statute called for this character of action. This court held frozen lamb dutiable as fresh lamb by similitude. *United States* v. *Conkey & Co.*, 12 Ct. Cust. Appls. 552, T. D. 40783.

An examination of these cases, however, will disclose that in each instance there was more similarity, for tariff duty purposes, between the goods in controversy and the goods enumerated, than exists under the state of facts at bar. There is not much similarity between a by-product stock or poultry feed such as bran, and a mealy material made by grinding a mixture of oats, barley, wheat, and certain impurities. In the one instance there is a by-product. In the other, with the exception of the oat hulls, nothing is removed from the whole grain contained therein. The better and more desirable parts of the grain mixture are retained in the latter instance while in the first instance the by-products are the left-overs. It is true there is some similarity of use—that is to say, they are both fed to stock or used in making stock feed. Millet and various other things are used for feeding stock, but there must be more similarity than the fact that they are both fed to stock to suggest the applicability of the similitude provision.

As to similarity of texture, it is to be noted that the paragraph calls for bran, shorts, by-product feeds obtained in milling wheat or other cereals; hulls of oats, barley, buckwheat, or other grains, ground or unground; dried beet pulp, malt sprouts, and brewers' grains; various

kinds of oil cake and oil-cake meal; and mixed feeds, consisting of an admixture of grains or grain products with oil cake, oil-cake meal, molasses, or other feedstuffs. It is true that shorts and the imported merchandise both have mealy and floury characteristics but the same is true of slaked lime and wheat flour. The imported material obviously has little similarity in texture to any of the articles named in paragraph 730.

Clearly, the quality of the imported merchandise is not similar to that of bran, shorts, and the other articles named in the paragraph. It would seem to be of higher quality.

We, therefore, are of the opinion that the goods at bar do not bear sufficient similarity either in material, quality, texture, or use to the articles provided for in paragraph 730 to justify the application of the mandate of paragraph 1559 in the manner urged by the appellant.

Among appellant's assignments of error is one that the trial court erred in refusing to receive in evidence "Exhibit 2 for Identification" which is said to consist of the official sample of Alpine feeding oatmeal involved in the case decided by the trial court, styled *J. A. Forrest* v. *United States*, T. D. 47712, 67 Treas. Dec. 837. It is stated that plaintiff's counsel personally obtained this sample from the "Sample Room of the Customs Court" and personally had custody of it from the time that he obtained it to the time that it was offered in evidence at the trial of the case in Buffalo. It was offered for the purpose of showing that the merchandise in the case at bar bears a similitude to the merchandise in the *J. A. Forrest* case, *supra*, which the trial court had held to be dutiable under said paragraph 730.

Judge Tilson, before whom the testimony was adduced, evidently declined to accept the sample in evidence because its authenticity had not been established. He stated at the time it was offered: "No; I don't think you have connected it up."

As we understand the ruling of the trial judge, it was to the effect that appellant had not, by proper proof, sufficiently identified the exhibit as the official sample in the other case. It would hardly be a safe practice to permit lawyers, regardless of their high character, to introduce exhibits for such a purpose as was suggested by importer's counsel, without laying a better foundation than was laid in the case at bar, and we are of the opinion that the court did not commit error, under the circumstances stated, in declining to receive this exhibit. Moreover, we might say in passing that if the exhibit had been admitted, it is not seen how a consideration of it and the evidence relating to it could have brought about in the trial court or here such a holding as is argued for by appellant.

By the foregoing, we do not mean to be understood as passing upon the question of whether or not an exhibit used in a decided case,

may, under certain circumstances, be introduced in another case for the purpose for which appellant sought to introduce it in the case at bar.

On this record, we are of the opinion that the classification and assessment of the collector should be sustained and the protests of the importer overruled. The judgment of the United States Customs Court, overruling appellant's protests, is, therefore, *affirmed.*