(C. D. 737)

EDENFRUIT PRODUCTS CO. v. UNITED STATES

United States Customs Court, Third Division

(Decided February 24, 1943)

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a suit against the United States in which the plaintiff seeks to recover a part of the duty assessed on pineapple cores imported in a solution of water to which sulphur dioxide has been added. The merchandise was imported from Canada but was produced from Cuban pineapples. Duty was assessed at 2 cents per pound on the net weight of the pineapple cores under the provision for "pineapples * *. * otherwise prepared or preserved, and not specially provided for" in paragraph 747 of the Tariff Act of 1930.

The protest contains a number of claims which may be briefly

summarized as follows: 10 per centum ad valorem as waste under paragraph 1555, less 20 per centum under the trade agreement with Cuba (T. D. 47232); at the rates of duty prescribed for pineapples in column 2 of the trade agreement with Cuba, *supra;* by amendment to the protest the merchandise is claimed dutiable at $\%_0$ of 1 cent each, as pineapples in bulk by similitude, under paragraph 747 as amended by trade agreements with Haiti (T. D. 47667) and Honduras (T. D. 48131); directly or by similitude at 35 per centum ad valorem as pineapples, candied, crystallized, or glace, under the third clause in paragraph 747; at 35 per centum ad valorem under the first clause of paragraph 752 as "fruits in their natural state   *   *   *   or otherwise prepared or preserved"; or at 10 or 20 per centum ad valorem as non-enumerated unmanufactured or manufactured articles under paragraph 1558.

The plaintiff called as a witness Mr. Glen C. Wardrip who is the vice president of the importing firm. He testified that the business of the firm is candying and glaceing raw fruits, such as pineapples, oranges, lemons, grapefruit, and cherries; that the merchandise covered by the instant protest consists of pineapple cores $\%$ inch around and about $3\frac{1}{2}$ inches long, imported in a water solution with approximately 3,500 parts per million of sulphur dioxide in barrels of 50 gallons capacity; that the raw pineapple cores would have spoiled if they had not been contained in the solution; that the core is the center of the raw pineapple running lengthwise and is fibrous and woody, that it is cut out of the pineapple because it would not be edible.

A raw pineapple was produced and the witness pointed out the portion from which the core would be cut. This sample was marked illustrative exhibit A but it has been withdrawn since the trial. The witness produced also a glass jar containing some pineapple cores in a solution and it was marked illustrative exhibit B.

The witness testified further that after importation the water solution is dumped and fresh water run through the cores for a period of 12 to 24 hours to wash out the sulphur dioxide; that the cores are then put in steam-jacketed kettles and boiled until they become soft; that then they are processed with a sugar solution until the fruit becomes impregnated up to approximately 72 per centum solid sugar; that they are then dried, cut into small pieces and sold to confectionery manufacturers who dip them in chocolate; that in the condition as imported they are not edible, due to an unpleasant taste; that after the sulphur dioxide is removed, but before treating with sugar, there is no natural taste or flavor left in the commodity.

A sample of the pieces which are ready for sale to the confectionery manufacturer was admitted in evidence as illustrative exhibit C.

On cross-examination the witness testified that his firm processes American fruits which are also put in sulphur to preserve them

before they are made into glace fruits; that the cores are cut from the pineapples for the purpose of being prepared into glaced material; that, if the solution in which they are imported is kept at a high enough test, the pineapple cores will keep indefinitely; that the sulphur solution stops the bacterial action in the fruit and prevents molding and also it bleaches the fruit; that the cores were all imported to be used for human consumption after processing.

On redirect examination the witness testified that the "toughness, and woodiness and fibrousness" of the cores also made them unsuitable for eating in the condition as imported; that the barrels in which the cores were imported contained 252 pounds of cores and were approximately two-thirds full of material and 25 gallons of water solution.

On further cross-examination the witness testified that the importation passed the food and drug laws and the defendant moved in evidence the declaration of the foreign shipper under the Food and Drug Act, which is attached to the invoice, and it was received in evidence and marked exhibit 1.

The collector classified the merchandise as prepared or preserved pineapples under paragraph 747 which reads as follows:

PAR. 747. Pineapples, 50 cents per crate of two and forty-five one-hundredths cubic feet; in bulk, 1⅙ cents each; candied, crystallized, or glacé, 35 per centum ad valorem; otherwise prepared or preserved, and not specially provided for, 2 cents per pound.

Counsel for the plaintiff, in his brief, does not press the claim that the merchandise is subject to reduced rates of duty by virtue of the trade agreement with Cuba. He claims that the merchandise is not dutiable as prepared or preserved pineapples because it is not edible, citing *United States* v. *Yick Shew Tong Co.*, 25 C. C. P. A. (Customs) 255, T. D. 49392. That case related to certain Chinese products which were claimed to be free of duty as crude drugs under paragraph 1669 of the Tariff Act of 1930. That paragraph contains the words "not edible" and the court considered the dictionary definitions of the word "edible" as meaning things habitually eaten by man or fit to be eaten as food. That decision is not pertinent in this case because the word "edible" is not used in paragraph 747 and we are at a loss to understand how the question of edibility of the imported products is material. It is shown by the record that the pineapple cores, in the condition as imported, passed the requirements of the Food and Drug Act and that they are not poisonous, but the texture is fibrous and woody and, on account of the sulphur dioxide content absorbed from the water solution, the taste is disagreeable. We are of opinion that the disagreeable taste and the toughness of the material of the articles would not deprive them of classification as prepared or preserved pineapples.

The plaintiff claims also that, inasmuch as the articles were im-

ported in a solution of sulphur dioxide used merely for the purpose of keeping the cores from spoiling while in transit to this country, they are not prepared or preserved within the trend of judicial decisions, citing *Hansen* v. *United States*, 1 Ct. Cust. Appls. 1, T. D. 30769; *United States* v. *Conkey*, 12 Ct. Cust. Appls. 552, T. D. 40783; *Stone & Downer* v. *United States*, 17 C. C. P. A. (Customs) 34, T. D. 43323; *Enbun Co.* v. *United States*, 73 Treas. Dec. 192, T. D. 49388; *Wa Chong Co.* v. *United States*, 61 Treas. Dec. 1118, T. D. 45695, and the cases therein cited which include *Peabody* v. *United States*, 13 Ct. Cust. Appls. 80, T. D. 40935.

Some of the cases cited by the plaintiff are not in point. In *Enbun Co.* v. *United States*, *Wa Chong Co.* v. *United States*, and *Peabody* v. *United States*, *supra*, the question involved was as to the dutiable weight of the commodities and the court held that fish packed in sake lees, ducks packed in peanut oil, and pineapples packed in water were dutiable on the net weight of the fish, ducks, and pineapples. In *Stone & Downer* v. *United States*, *supra*, the question involved was whether pitted dates were prepared or preserved and the court held that they were prepared.

In *Hansen* v. *United States*, *supra*, the merchandise consisted of fish roe packed in cans or in barrels and it was imported under refrigeration. The court held that the merchandise was free of duty as fish eggs under paragraph 549 of the Tariff Act of 1897 which contained in a proviso the words, "that this shall not be held to include * * * fish roe preserved for food purposes." Before shipment to the United States, the fresh roe had been dropped into a solution of brine, and, after the brine was drawn off, it was packed in the cans and barrels for shipment in a refrigerated state. The court held that it was not preserved. In reviewing the judicial interpretation of the word "preserved," the court said:

The word "preserved" as used by Congress in tariff laws has been frequently the subject of interpretation. The uniform trend of decisions has been such as to establish a well-settled principle in the tariff interpretation, that the use of any instrumentality such as salt or sulphur fumes or any other agency of preservation in a limited extent in order to conserve the same in transit does not bring the goods into that condition known as "preserved" as that term is used in the tariff laws.

\* \* \* \* \* \* \*

The merchandise in *United States* v. *Conkey & Co.*, *supra*, consisted of frozen lamb imported from the Argentine. It was classified as fresh lamb by the collector and the importer claimed that it should have been classified as prepared or preserved meat. The court held that the lamb was not preserved within a tariff sense and that it was dutiable as fresh lamb by similitude. The question of whether or not the lamb was prepared in any manner does not seem to have been

raised. Counsel for the plaintiff quotes in his brief the following excerpt from the decision:

\* \* \*. This court, and other courts, have frequently held that articles of importation, referred to in the tariff statutes as preserved, have had something more done to them to preserve them than merely to arrest change and decomposition while in transit.—Hansen v. United States (1 Ct. Cust. Appls. 1; T. D. 30769); Kwong Yuen Shing v. United States (1 Ct. Cust. Appls. 16; T. D. 30774); Causse Mfg. Co. v. United States (151 Fed. 4); Moscahlades Bros. v. United States (6 Ct. Cust. Appls. 399; T. D. 35973).

"Prepared, or preserved," as used in the tariff acts ordinarily involves cooking, salting, drying, smoking, curing, or the application of some method or process whereby the fresh or natural condition of the article is so changed as to be more or less a permanent preservation.—Habicht v. United States (1 Ct. Cust. Appls. 10; T. D. 30772). When used in the tariff sense, the word "prepared" is sometimes used synonymously with preserved, but, in a general sense, it implies that the fresh or raw material has undergone certain mechanical changes, such as cutting, slicing, grinding, mashing, mixing. etc., and usually implies that it has been advanced toward the condition in which it is used, and frequently such preparation either aids or accomplishes preservation.

In the two cases last above-cited, the question as to whether the merchandise was "prepared" was not considered, the only question being as to whether or not it was "preserved."

Counsel for the defendant cites *Amerman & Patterson v. United States*, 12 Ct. Cust. Appls. 117, T. D. 40047; *Delapenha & Co. v. United States*, 6 Ct. Cust. Appls. 18, T. D. 35252; *Causse Mfg. Co. v. United States*, 151 Fed. 4, T. D. 27751; and *Stone & Downer v. United States*, 17 C. C. P. A. (Customs) 34, T. D. 43323.

In *Amerman & Patterson v. United States, supra,* the merchandise consisted of pineapples cut into square pieces and imported in brine. The articles were classified under the provision for "edible fruits \* \* \* prepared in any manner" under paragraph 217 of the Tariff Act of 1913 and the importers claimed that they should have been classified as "fruits in brine" under paragraph 488. In holding that the merchandise was properly classified by the collector, the court said:

It appears that the merchandise was produced in the following manner: Pineapples while yet green were peeled, then cut into rectangular pieces, then subjected to fumes of sulphur dioxide, then immersed in brine composed of about 20 pounds of salt to 45 gallons of water, which after several days was replaced by fresh brine apparently of equal strength, then packed in barrels and covered with other brine ready for shipment. The article was intended for use in this country as material in the manufacture of glacé pineapple, and it was sliced and treated with sulphur fumes and brine before importation in order to prepare it for that purpose. The process tended to bleach the fruit, and to make it harder and firmer in texture, and also aided in permitting the sugar to penetrate into it. If sliced pineapple should be imported without being thus processed with intensive brine and sulphur fumes, it would become soft and dark, and would not be suitable as glacé material. And if fresh pineapples should be imported to be made into glacé pineapple, it would be necessary after importation to treat them with sulphur fumes just as these were treated before importation. It appears from the record that for some

years prior to 1920 it was the practice of the importers to ship fresh pineapples from Cuba into Florida, and there process them with sulphur fumes in order to prepare them as glacé material.

Upon these facts we think that the imported merchandise answered to the description of "edible fruits * * * prepared in any manner," and was rightly assessed with duty under the provisions of paragraph 217. At the time of importation the present article was advanced in condition from the tariff status of mere green or ripe fruit to that of prepared fruit, for the treatment above described was virtually the first step in the manufacture of another commodity, namely, glacé pineapple, and the original pineapple was thereby prepared as material for that manufacture. In the case of Causse Mfg. Co. v. United States (151 Fed. 4, Circuit Court of Appeals, Second Circuit), cherries from which the pits had been removed were washed several times in water, as a result of which dirt and free juices were removed, then exposed to sulphur fumes, then packed in casks in a weak solution of salt water in order to preserve the fruit in transit, and then imported to be converted into candied cherries. These were held to be dutiable as prepared edible fruits under a provision in paragraph 262, tariff act of 1897, which was substantially similar to that in paragraph 217, supra. The saline solution in that case, however, was not sufficiently strong to be called brine. Therefore the decision was not rested upon the point now in question. Nevertheless the case is apt authority for the statement that fruits thus processed answer to the description of prepared edible fruits under the act. * * *.

In *Delapenha & Co.* v. *United States, supra,* edible sulphured cherries in water were held to have been preserved by the sulphur treatment and therefore dutiable under a provision in paragraph 274, Tariff Act of 1909, for "edible fruits * * * prepared in any manner * * *."

In the cases cited by the defendant, the Tariff Acts of 1897, 1909, and 1913 did not contain any specific provisions for "pineapples, prepared or preserved" or "cherries, prepared or preserved" and the court held the articles were properly classifiable under the provision for "fruits * * * prepared in any manner."

In the case of *Stone & Downer Co.* v. *United States, supra,* the merchandise was pitted fresh dates and the court held that they were dutiable under the provision for "dates * * * prepared or preserved," as the pitting process was a preparation. The court said:

The word "prepared", in a tariff sense, means, ordinarily, that a commodity has been so processed as to be advanced in condition and made more valuable for its intended use. *United States* v. *Conkey & Co.,* 12 Ct. Cust. Appls. 552, T. D. 40783.

In *United States* v. *Conkey & Co., supra,* the court said that "cutting, slicing, grinding, mashing, mixing, etc." were methods of preparing in a general sense. If the pitting of dates is a preparation, certainly the cutting of the cores out of pineapples is a preparation, because it is the first step in preparing the merchandise for its intended use.

The merchandise in *Peabody & Co.* v. *United States, supra,* was imported during a period covered by the Tariff Act of 1922 which contained in paragraph 746 a provision for "pineapples * * * prepared or preserved." Some of the merchandise in that case was

pineapples cut into chunks, and, although the issue related to the question of whether or not the water in the tins should be assessed at the same rate of duty as the pineapple chunks, the court held that the pineapple chunks were dutiable under the provision for "pineapples * * * prepared or preserved," which is the same provision in the act of 1930 under which the merchandise in the instant case was classified.

In some of the cases cited by the plaintiff, the court held that raw fruits or other commodities placed in a solution to arrest change and decomposition in transit to this country were not "preserved," but in this case we have to determine whether or not the merchandise was "prepared or preserved." The record shows that although the goods in this case will keep indefinitely in the solution in which they were imported, they cannot be used for any purpose until the sulphur dioxide is removed from the fruit, but, if we were to hold that they are not "preserved," we still have to determine whether or not they are "prepared."

The authorities above cited hold that, when an article is advanced in condition by cutting, slicing, etc., to make it more valuable for its intended purpose, it is "prepared." The reason for cutting the cores out of the pineapples is not shown in the record but it appears that they are useful in that condition for processing into chocolate-covered confectionery, and, for all that appears in the record, they may have been cut out of the pineapples for that particular purpose. Furthermore, the solution bleaches the commodity. We hold that the merchandise falls within the provision for prepared pineapples.

We are of opinion that the merchandise was properly classified by the collector. Therefore, it is not dutiable as a nonenumerated manufactured or unmanufactured article, as claimed by the plaintiff, and the similitude clause cannot be invoked to remove it to any of the other paragraphs claimed by the plaintiff. The claim that the merchandise is waste is not supported by the evidence. The protest is overruled. Judgment will be entered in favor of the defendant.