(C. D. 1054)

Frosted Fruit Products Co. v. United States

United States Customs Court, Third Division

(Decided June 4, 1947)

Harper & Harper (*Walter I. Carpeneti* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Joseph E. Weil* and *Richard E. Fitz-Gibbon,* special attorneys), for the defendant.

Before Cline and Ekwall, Judges

Cline, Judge: This is a suit against the United States arising at the port of Los Angeles in which the plaintiff seeks to recover a part of the duty assessed on frozen guavas imported from Mexico.

The collector classified the merchandise as fruits in their natural state, not specially provided for, and assessed duty thereon at 35 per centum ad valorem under paragraph 752 of the Tariff Act of 1930. The plaintiff claims that duty should have been assessed at 17½ per

centum ad valorem under the provisions of trade agreements with Guatemala (T. D. 48317), El Salvador (T. D. 48947), Costa Rica (T. D. 49072), Haiti (T. D. 47667), and Honduras (T. D. 48131), which provide the reduced rate for:

Guavas prepared or preserved, and not specially provided for.

The pertinent provisions of paragraph 752 of the Tariff Act of 1930 are as follows:

Fruits in their natural state, or in brine, pickled, dried, desiccated, evaporated, or otherwise prepared or preserved, and not specially provided for    *    *    *    35 per centum ad valorem;    *    *    *.

James S. Lawless, manager of the importing firm, testified that he saw the fruit upon its arrival in Los Angeles; that it had been shipped in a refrigerator car built to accommodate ice with 30 per centum salt; that it was packed in completely closed boxes holding about 25 pounds of fruit; that the merchandise was very solidly frozen and appeared bright and clean as if it had been washed and carefully trimmed. The witness also stated that the calyx or stem end and portions around it had been trimmed off and that any scales or blemishes had been removed. In connection with the effect of freezing upon the merchandise, the witness testified that freezing preserves the fruit; that it causes the guavas to become solid and to shrivel slightly on the outside due to dehydration; that oxidation results and a slight loss of vitamin C takes place; that chemical changes occur within the fruit; and that ice crystals are formed within the fruit which rupture the cells causing a very definite interchange of the sugars and water ratio within the fruit.

Mr. Lawless stated that some of the imported guavas were pureed or ground and sold for use in ice cream, sherbet, or in beverages; that some were cooked and put up in cans; that some were eaten as dessert after being thawed out; and that some were used as a source of vitamin C. However, he added that after they had been thawed out, they did not have the same appearance as fresh fruit and were mushy, could not be picked up, and had to be eaten with a spoon.

The issue herein is whether frozen guavas are dutiable as guavas, prepared or preserved, or as fruits in their natural state.

The meaning of the term "prepared" in a tariff sense was stated in *Stone & Downer Co.* v. *United States*, 17 C. C. P. A. 34, T. D. 43323, to be as follows (p. 36):

The word "prepared," in a tariff sense, means, ordinarily, that a commodity has been so processed as to be advanced in condition and made more valuable for its intended use.

In that case the merchandise consisted of pitted dates which were imported and sold for grinding purposes. There was evidence that the pitted dates were more valuable for that purpose than unpitted dates. It was therefore held that they were "prepared."

In *Pasquale D'Auria* v. *United States*, 56 Treas. Dec. 545, T. D. 43702, the merchandise consisted of dried prunes from which the pits had been removed and smaller prunes inserted. They were held to be "prepared," since the pitting and stuffing advanced their condition and made them more valuable for eating purposes.

In *United States* v. *Makaroff*, 14 Ct. Cust. Appls. 304, T. D. 41912, a mild salt solution was added to caviar to harden it. The court stated that a process which hardens an otherwise soft substance and thereby makes it more valuable for its intended use is a process of preparation. However, since there was no evidence that the eggs were hardened in order to make them more valuable for food purposes, the decision was based upon the presumption of correctness attaching to the collector's classification.

In the instant case there is no evidence that the guavas were advanced in condition by freezing. They were afterwards ground, cooked, eaten, or used as a source of vitamin C, but there is nothing to indicate that unfrozen guavas could not have been used for these purposes just as readily. On the contrary, the imported guavas would presumably have to be thawed out before they could be used. Therefore, they are not "prepared" in a tariff sense.

Are they "Preserved"? It has been held that preservation in a tariff sense "ordinarily involves cooking, salting, drying, smoking, curing, or the application of some method or process whereby the fresh or natural condition of the article is so changed as to be more or less a permanent preservation" and that something more must be done to it than merely to arrest change and decomposition while in transit. *United States* v. *Conkey & Co.*, 12 Ct. Cust. Appls. 552, T. D. 40783. That case involved frozen lamb and the question was whether it was dutiable as fresh lamb or as meats, preserved. The evidence showed that the freezing process bursts the tissues and that when the meat was cooked thereafter, some of the natural flavors were lost; and that when meat is kept frozen, it will keep in substantially the same condition for an indefinite period of time. The court held that the frozen lamb was not preserved and that it was dutiable as fresh lamb by similitude.

To be "preserved," an article must be so processed that it is ready for ultimate use in the condition to which it has been changed for preservation. A frozen product will be preserved as long as it is frozen, but it must be thawed out before use. Webster's New International Dictionary (1933 ed.) gives the following definition of "preserve":

To save from decay by the use of some preservative substance, as sugar, salt, etc.; to prepare so as to prevent decomposition or fermentation, as by seasoning, canning, etc., as fruits, meat, etc.; as, to *preserve* peaches; to *preserve* milk.

Commonly, "preserves" are products which have been cooked and canned and are to be consumed in the condition to which they have been changed. Frozen foods are sold to be used, after thawing, in the same way as fresh foods. They are not generally thought of as "preserves."

In a second case involving frozen lamb (*John A. Conkey & Co. v. United States*, 16 Ct. Cust. Appls. 120, T. D. 42766), it was claimed that the record established that freezing was a modern method of preservation and that frozen lamb was preserved meat "in fact, in commerce, in common parlance, and in law." The court, however, rejected this view.

Therefore, we do not believe that the frozen guavas herein are guavas, preserved.

It is claimed also that they more nearly resemble guavas, prepared or preserved, than fruits in their natural state and are dutiable as such by similitude. We are somewhat doubtful as to the applicability of the similitude clause to this case. The general rule is that where the tariff act prescribes a duty for an article when it is in a certain condition, it precludes the application of the similitude clause to the same article when it is in a different condition. *Fensterer & Ruhe* v. *United States*, 1 Ct. Cust. Appls. 93, T. D. 31110; *United States* v. *Post Fish Co.*, 13 Ct. Cust. Appls. 155, T. D. 41022; *Cresca Co. (Inc.)* v. *United States*, 17 C. C. P. A. 83, T. D. 43376. In the case first cited, the court quoted with approval from *Schoenmann* v. *United States*, 119 Fed. Rep. 584, as follows (p. 98):

\* \* \* We do not think that this section is susceptible of this interpretation, or was meant to apply except to articles of manufacture, which, though different and distinct from each other, are similar in the respects mentioned in the statute. In this case there is an identity of material, not similarity, and when the statute expressly prescribes a duty for this material, when it is in a certain condition, it must be taken to preclude the application of the similitude statute to the same material not in that condition. It would be equally as reasonable to say that because certain stones fashioned into monuments or into cubical blocks are dutiable, stones not so fashioned, and not in building shapes, should be liable to the same tax on the ground of similarity of material.

The trade agreements above mentioned provide only for guavas, prepared or preserved. Since the guavas herein are in a different condition—frozen—we do not think they may be classified by similitude as prepared or preserved.

This reasoning also seems to apply to classification by similitude under paragraph 752, which covers "Fruits in their natural state, or in brine, pickled, dried, desiccated, evaporated, or otherwise prepared or preserved," but not frozen fruits.

However, in *United States* v. *Conkey & Co., supra*, it was claimed that frozen lamb could be classified by similitude either as fresh lamb

or as meats, preserved. In applying the similitude clause, the court said (p. 556):

> Since the article is not eo nomine provided for, and since it is clear that it can not be classified under section 1459, we are called upon to apply the doctrine of similitude to the two paragraphs in question. In applying the doctrine laid down in the Buss and Warner case, supra, and numerous other cases, we are led to inquire, as between fresh lamb and prepared or preserved meat, which does the imported article most resemble? Clearly, it most resembles fresh lamb. Fresh lamb, under paragraph 702, is more specific than fresh meat under paragraph 706, and therefore the imported frozen merchandise should be classified, by similitude, as fresh lamb. In so deciding we are not unmindful of the very clear difference between frozen lamb and fresh lamb, but we are also especially impressed with the similarity in material, quality, texture, and use. * * *

In *United States* v. *Post Fish Co.*, *supra*, where it was held that fish roe not packed in ice could not be classified as "fish roe for food purposes, packed in ice * * *" by similitude, the court distinguished the *Conkey* case as follows (p. 161):

> * * * Attention is called to the case of *United States* v. *Conkey & Co.*, 12 Ct. Cust. Appls. 552, T. D. 40783, where we held frozen meat to be fresh meat, by similitude. The proof in that case clearly showed the frozen meat to be different from fresh meat, actually and commercially, but to be similar to it in material, qualities, and use; it was therefore properly classified by similitude as fresh meat. We have no such state of facts here.

In the instant case, it appears that the imported frozen guavas are different from fresh guavas in that the calyx has been removed and the tissues are broken down. They are perhaps as different from fresh guavas as frozen lamb is from fresh lamb. Moreover, it has not been shown that they more closely resemble preserved guavas, since there is no evidence in the record as to the appearance, material, characteristics, or use of preserved guavas. Upon this state of the record, it must be held that the presumption of correctness attaching to the collector's classification of the merchandise as fruits in their natural state has not been overcome. The protest is therefore overruled and judgment will be rendered in favor of the defendant.