UNITED STATES v. HAMMOND (No. 3000) [1]

[1] T. D. 42567.

United States Court of Customs Appeals, January 23, 1928

*Charles D. Lawrence*, Assistant Attorney General (*Ralph Folks*, special attorney, of counsel), for the United States.
*Waterhouse & Lockett* (*William E. Waterhouse* of counsel) for appellee.

[Oral argument December 8, 1927, by Mr. Lawrence and Mr. Waterhouse]

Before SMITH, BARBER, BLAND, and HATFIELD, Associate Judges; GRAHAM, Presiding Judge, participating in the decision by agreement of counsel

BLAND, Judge, delivered the opinion of the court:

This appeal involves the construction of the provisions of paragraph 718 of the Tariff Act of 1922, which read as follows:

Salmon, pickled, salted, smoked, kippered, or otherwise prepared or preserved, 25 per centum ad valorem; finnan haddie, 25 per centum ad valorem; dried fish, salted or unsalted, 1¼ cents per pound; smoked herring, skinned or boned, 2½ cents per pound; all other fish, skinned or boned, in bulk, or in immediate containers weighing with their contents more than fifteen pounds each, 2½ cents per pound net weight.

The appraiser's answer to the protest is as follows:

The merchandise subject of protests consists of salt fish of various kinds, skinned and boned, in immediate containers weighing, with their contents, more than 15 pounds each, and consequently returned for duty at the rate of 2½ cents per pound under the final provision in paragraph 718 of the present tariff.

Claim is made that the merchandise is dutiable as dried fish, dutiable at 1¼ cents per pound only, under the same paragraph. Even admitting that the merchandise is dried fish, it is also skinned and boned, and invoking the provision of paragraph 1460, that when two or more rates apply the highest shall prevail, it would still be assessed at 2½ cents per pound.

The importation consisted of codfish which had been cleaned, dried, salted, and skinned. All the bones had been taken out of the fish and the same had been cut in such a way as to produce what some of the witnesses styled as tenderloin, napes, and middles, which were separately packed in containers, which immediate containers with their contents weighed more than 15 pounds each. The record shows that when the fish comes in fresh from the boats the entrails are removed, the head is cut off, the fish is split down the under side

and the sound bone removed, the sound bone being about two-thirds of the backbone extending from the neck half way back. The remaining portion of the backbone, extending to the tail, is left in the fish, as are also the nape bone, ribs and other bones. After washing, these fish are placed in butts, with layers of salt, where they remain until thoroughly struck or salt-cured, which ofttimes requires three weeks or more. No water is used in the salting, the moisture of the fish producing a heavy brine, and it comes from the butts dripping wet.

The process of drying then begins, which consists of piling the fish in stacks or kenches, with an air space below, where the weight of the fish presses out most of the moisture. This process is known as "water-horsing." In order to get even pressure and uniform drying, the fish are sometimes repiled in the kenches, reversing the top and bottom layers. They are left in this position for several days, until dried to the desired point. They are taken from the kenches partly dried, exposed on racks or flakes in the sun for a final drying. The boneless fish, like collective Exhibit 1 and 2, after having been dried in the manner indicated, are then skinned and the remaining bones removed. This process is usually performed before they are exposed to the sun for the final drying on the flakes. The amount of drying depends upon market conditions and the character of climate to which they are to be sent. At times the drying in the kenches is sufficient and they are skinned and boned and marketed without further drying. This is especially true when they are marketed in cold weather. The rule is, however, to sun dry them after the skin has been removed.

The testimony shows that this is not the process for preparing dried fish for export, which are necessarily subject to all kinds of climatic conditions. A degree of dryness there is required which does not maintain in the drying and preparation of the codfish in controversy here. The record, furthermore, shows that the drying of the fish in the sun also bleaches the product and improves its appearance.

It is not disputed anywhere in the record in this case or in oral argument before the court that the fish in controversy has been dried within the common meaning of that term.

The Government argues and attempted to prove that the dried fish provided for in the third provision of said paragraph was by Congress intended to be only such dried fish as commercially responded to that term, and that dried fish in commerce, on and before the passage of the act of 1922, did not include fish prepared like those in controversy here. It is the contention of the Government that the collector properly classified the merchandise as "all other fish, skinned or boned, in bulk, or in immediate containers weighing with

their contents more than fifteen pounds each, 2½ cents per pound net weight," and that "all other fish" does not have reference to all other fish not enumerated in the paragraph, but only to all other fish not mentioned in the clause immediately preceding it.

The importer contends that "dried fish" is used in a descriptive sense, and is not a commercial term, and that "all other fish" means all other fish not mentioned in the paragraph; that the fish in controversy has been dried and responds to the descriptive term used, and is, therefore, dutiable at 1¼ cents per pound.

In *United States* v. *Aki*, 12 Ct. Cust. Appls. 415, 46 Treas. Dec. 583, T. D. 40588, this court ruled upon this exact question adversely to the contention of the Government and held in part as follows:

In view of all the fish provisions of the act, we are of the opinion that Congress intended by the use of the word "other" in the last clause of paragraph 718 to limit its application to fish that had not already been mentioned therein.

This interpretation results in the conclusion that the imported fish here are provided for therein as "dried fish, salted or unsalted," and there is, therefore, no room for the contention of the Government that paragraph 1460 of the act, providing that if two or more rates of duty shall be applicable to any imported article it shall pay duty at the highest of said rates, should be applied in this case.

We are aware that there may be some doubt as to the correctness of this interpretation of paragraph 718, but that fact invites the application of the rule that in such cases the importer is entitled to the benefit of the doubt.

The court below sustained the protest of the importer and stated that this case in no respect differed from the Aki case, supra, except that in that case the fish were bonita, while in this instance they are cod. The Government points out that there was no testimony in the other case and that in this case the elaborate testimony throws new light on the probable intent of Congress, and establishes commercial designation. It must be at once conceded that, if the Government has shown that "dried fish" in trade and commerce on and prior to the date of passage of the act was uniformly known to be merchandise differing from that here under consideration, then a different situation would prevail from that which did prevail when the *Aki* case was before us.

The court below heard the witnesses, the testimony was conflicting, they found against the contention of the Government, and we are not disposed to disturb their finding under the circumstances. When the Aki case was considered in this court we fully realized that our interpretation there of the meaning of this paragraph did not fully satisfy us as to the exact intentions of the legislature in the enactment of the paragraph, in so far as some apparent incongruities resulted. It was contended then, and is contended now, by the Government that this interpretation places a duty of 2½ cents per pound upon fish packed in containers weighing more than 15 pounds, and a smaller duty on the same material when packed in smaller containers.

It is, furthermore, obvious, as has been pointed out by the Government's learned counsel, that this highly processed food product, under our interpretation here, is to bear a less rate of duty than the codfish which have merely been skinned and boned, and which have not been dried or separated into choice and less desirable pieces. Any other interpretation, however, must necessarily bring with it results equally unsatisfactory, which we think justifies us in reaffirming our views expressed in the *Aki* case.

As Justice Brown points out in the decision of the court below, the testimony shows that skinned and boned fish which has not been dried is imported in large quantities into this country in the form of fresh fillets of haddock, sole, etc. It is hardly probable that Congress could have intended fresh fillets of fish to take the same duty as dried fillets, since the latter product is the result of elaborate processing.

As we view it, no judicial interpretation of the paragraph can make it free from ambiguity and without resulting incongruity; none has occurred to us or has been suggested. Giving the language used its ordinary meaning, and applying the ordinary rules of legal and grammatical construction, we think, under the circumstances, is proper. The judgment of the United States Customs Court is *affirmed*.