BEFORE THE FIRST DIVISION, FEBRUARY 5, 1943

**No. 47993.**—Protest 45014–K of Geo. S. Bush & Co., Inc. (Seattle).

COLE, Judge:   Certain fish exported from Japan and imported at the port of Seattle, Wash., were assessed with duty at the rate of 25 percent ad valorem under the provision in paragraph 719 (5), Tariff Act of 1930, for "Fish, pickled or salted,   *   *   *   in immediate containers (not air-tight) weighing with their contents not more than fifteen pounds each   *   *   *." Plaintiff claims that the merchandise is properly dutiable at 1¼ cents per pound under the provision in paragraph 717 (c) of the same act for fish, dried and unsalted.

Samples of the three items in dispute were admitted in evidence. The "Chirimen-Iriko" is exhibit 1; the "Chuba-Iriko" is exhibit 2; and the "Chuba-Iriko," exhibit 3. In their present condition the three exhibits are macerated, the result of an analysis made by the Government chemist. It is therefore impossible to describe the fish as imported, but it appears of record that each kind or class varied in length, and all of them were less than 4 inches long. In the future, some portion of the official exhibits should be preserved for the court's use when the case is taken up for decision.

Plaintiff's sole witness was born in Japan, having come to the United States about 50 years ago. He has been engaged in the restaurant business in Seattle for the past 25 years, during which time he has seen the merchandise in question in use. Since his arrival in this country he has made seven trips to Japan. While there each time he observed the preparation of fish like that under consideration here, describing the procedure as follows: The fish, immediately upon removal from the water, are taken in small boats to the factory where they are put in tubs containing 14 to 15 gallons of sea water, remaining therein for approximately 1 hour. They are then scooped into small baskets and placed in vats of boiling sea water, to which has been added a quantity of salt (approximately a handful for each 10 gallons of water), and in that state left for a period of from 5 to 8 minutes, depending on their size, the shortest remaining the least time, and following such cooking process they are allowed to dry in the sun for a week to 10 days before they are packed.

At the instance of the defendant, with approval of the plaintiff, the exhibits were analyzed by the Government chemist in San Francisco. The writer of this opinion did not conduct the trial, either at Seattle or San Francisco, so is therefore unable to set forth the appearance or the condition of the merchandise when

it was submitted to the analyst, representing its imported condition. The assistant chemist, conducting the analyses, who has been employed in the customs laboratory for about 15 years, testified that during the last 5 or 6 years he has analyzed fresh fish as well as salted fish for their sodium chloride (salt) content, and that he has studied different authorities dealing with the salt content of fish. He analyzed the three exhibits in evidence, and in so doing followed a method recognized as standard for the last 50 years, and which he has employed in his work many times. His analyses revealed the presence of salt in the fish under consideration in the following percentages, which are based on the weights of the samples: "Chirimen-Iriko" (exhibit 1), 14.3 percent; "Chuba-Iriko" (exhibit 2), 9.6 percent; "Chuba-Iriko" (exhibit 3), 6.5 percent. He concluded that the above percentages of salt were not natural to the fish in question, and that they indicated the addition of salt thereto.

Counsel for plaintiff presented the case on the premise that the only issue involved was whether or not the fish were salted, and argues that the salt treatment applied to this merchandise did not bring it within the provision for "salted fish" in paragraph 719, as classified by the collector. *United States* v. *Hammond*, 15 Ct. Cust. Appls. 386; T. D. 42567, is cited in support of that contention. However, in that case the merchandise consisted of codfish which had been cleaned, dried, salted, and skinned, and the court, describing the salt treatment to which the merchandise was subjected, stated:

After washing, these fish are placed in butts with layers of salt, where they remain until thoroughly struck or salt-cured, which ofttimes requires three weeks or more. No water is used in the salting, the moisture of the fish producing a heavy brine, and it comes from the butts dripping wet.

Evidently the plaintiff seeks to restrict the scope of the term "salted" as used in paragraph 719, *supra*, to such a thorough process as above described, although there is nothing in the conclusion of the court in the cited case to warrant such an application. As a matter of fact, the court was not called upon to give any interpretation of the term there. The issue presented involved a construction of paragraph 718, Tariff Act of 1922. The salt treatment of the fish was merely mentioned in the course of the court's description of the method of preparing the merchandise for export.

The cited case is not decisive of the issues presented herein. Nor does the language of the statute warrant the limited construction plaintiff proposes. No modifying or qualifying words are used to suggest that the term "salted" relates to a particular method of salt treatment, or the use of a certain quantity of salt.

The processing with salt of the fish in question, however, was only one of the operations to which the merchandise was subjected prior to its exportation. The fish were also boiled and dried. All of these processes comprised a definite treatment of the fish for a specific purpose. Plaintiff's testimony is very positive that the salting, cooking, and drying operations were applied to preserve the fish. Considering that the fish were very small in size, it seems to be a fair conclusion that this processing had a material effect on their condition and changed or adjusted it to serve the purpose for this method of preparation.

In the light of the record herein, the merchandise in question seems to be properly classifiable under the provision in paragraph 720 (b), Tariff Act of 1930, for "Fish, prepared or preserved, not specially provided for, in immediate containers weighing with their contents not more than fifteen pounds each," and dutiable thereunder at the rate of 25 percent ad valorem. This court so holds. *M. Furuya Co.* v. *United States*, 44 Treas. Dec. 328, T. D. 39902, cited.

The protest is therefore overruled without affirming the decision of the collector. Judgment will be rendered accordingly.