**No. 50242.**—Protest 46147–K of Enbun Co. (Los Angeles).

COLE, Judge: This case concerns the tariff classification of certain fish described on the invoice as "Dried Fish (Hanagatsuo)," to which the protest was limited when it was called for trial at Los Angeles where the merchandise was entered. The collector classified it under the provision in paragraph 720 (b), Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 720 (b)), for "Fish, prepared or preserved, not specially provided for, in immediate containers weighing with their contents not more than fifteen pounds each," and assessed duty at the rate of 25 percent ad valorem. Plaintiff claims the merchandise is more specifically provided for in paragraph 717 (c), Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 717 (c), as dried and unsalted fish. The protest cites 1½ cents per pound which evidently is a typographical error because no such rate is applicable under paragraph 717 (c)), the proper one being 1¼ cents a pound.

The record consists of the oral testimony of two customs officials at the port of entry and the report (plaintiff's exhibit 1) of the official analysis. ·

The appraiser, whose advisory classification was accepted by the collector,

testified that he was familiar for a period of 16 years with hanagatsuo which he described as a filet of bonita that is dried and then shaved into very thin slices.

The analyst's report, so far as it relates to the instant merchandise, reads as follows:

#137. Shaved Bonita. The sample gives positive tests for the presence of compounds produced by the hydrolysis of proteins such as glutamic acid or its salts, but it is the opinion of this laboratory that monosodium glutamata has not been added. No added salt.

The chief chemist, who supervised the official analysis, testified that for determining the presence of amino acids (of which glutamic acid is one) the "ninhydrin test" was used, and for ascertaining the percentage of added salt the standard method of the Association of Official Agricultural Chemists was employed. The "ninhydrin" test derives its name from the chemical that is used. Ninhydrin is added to a water extract of the dried fish and when amino acids are present the solution becomes blue. In analyzing the merchandise in question, the reaction was very weak, indicating only a small amount of the substance responsible for the coloring.

While not disclosing the actual process applied prior to importation, the record is sufficient for finding that the imported hanagatsuo is dried, unsalted fish, that has been subjected to some degree of preparation. To what extent it has been prepared is immaterial for determining the relative specificity of the provisions in issue.

Counsel for plaintiff, in their brief, argue that *United States* v. *Enbun*, 19 C. C. P. A. 79, T. D. 45224, is controlling. That case arose under the Tariff Act of 1922, and involved merchandise conceded to be "dried, unsalted fish, known as bonita, which had been shaved or shredded." Although the language of the competing paragraphs in that case was not identical with those of the present controversy, the issue there was substantially the same as that presented here. We quote from the court's opinion:

It is argued by the Government that because the fish in question had been subjected to a further process, namely, that of shredding or shaving, the fish has become something more than dried fish and should be properly classified, under the said provision in said paragraph 720, as prepared fish.

We are not prepared to coincide with the views of Government counsel in this respect. Drying has long been held by this court to be a method of preservation. *United States* v. *Kagawa*, 5 Ct. Cust. Appls. 388, T. D. 34934.

If drying is in itself a particular kind of preservation, it seems to follow, as a natural sequence, that the language "dried fish" is more specific than the general language fish "otherwise prepared or preserved."

To support that conclusion, *Shallus & Co.* v. *United States*, 18 C. C. P. A. (Customs) 332, T. D. 44585, was cited with approval. That case involved egg albumen which the court found had been prepared and dried, and in holding the provision for "dried egg albumen" to be more specific, the court reasoned as follows:

* * * If, therefore, the albumen is both dried and prepared, there can be but one conclusion in the matter, namely, that it must be classified as dried, for it must be conceded, we think, that the expression "dried egg albumen" is more specific than "egg albumen prepared or preserved." The term "preparation or preservation" may cover many processes. The term "dried egg albumen," however, is specific and covers but one.

The cited authorities support plaintiff's contention for, by the same reasoning employed therein, "Fish, dried and unsalted" is more specific than "Fish, prepared or preserved." We therefore hold the hanagatsuo represented by item "Y.156—Dried Fish (Hanagatsuo)" on the invoice with entry 9275, and item "Y.137½—Dried Fish (Hanagatsuo)," on the invoice with entry 8467 to be classifiable under said paragraph 717 (c), as claimed.

To the extent indicated the protest is sustained. In all other respects and as to all other merchandise the protest is overruled. Judgment will be rendered accordingly.