BEFORE THE FIRST DIVISION, MAY 6, 1954

No. 58059.—Ti Hang Lung & Co. *v.* United States, protest 157642-K (San Francisco).

OLIVER, Chief Judge: This protest relates to merchandise described on the invoice as "dried fish fins," which the collector assessed with duty at the rate of 25 per centum ad valorem under the provision in paragraph 720 (b) of the Tariff

Act of 1930, for "Fish, prepared or preserved, not specially provided for, in immediate containers weighing with their contents not more than fifteen pounds each." Plaintiff claims that the merchandise is properly classifiable under the provision for "Shark fins" in paragraph 717 (c) of the Tariff Act of 1930, as modified by T. D. 50956, which, so far as pertinent, reads as follows:

(c)   Fish, dried and unsalted:
       Cod, haddock, hake, pollock, and cusk_____ 1¼¢ per pound
       Other, including shark fins_____ ⅝¢ per pound

At the trial, the parties stipulated that the commodity in question (plaintiff's exhibit 1) is the substance or meat removed from the fins of sharks, or "whatever remains after the covering of the fin is removed," and which has been "boiled and shredded and packed in containers of approximately one pound; not air-tight."

The only witness in the case appeared on behalf of the defendant. He was the customs examiner who advisorily classified the product in question. After identifying a crude shark fin (defendant's illustrative exhibit A), the witness described the process to which such a commodity must be subjected, in order to obtain the imported merchandise. In this connection, he stated that the "fins must be boiled in hot water for approximately 2 to 3 hours before it is sufficiently soft that the outer skin and scum could be scraped off." The waste gelatinous matter is discarded so that only the inner meat, which is the edible substance, is exposed. "That meat which is exposed is similar to Plaintiff's Exhibit Number 1, with the exception that it is soaked in water, of course, and it is soft." After the boiling process and the scraping of the outer skin, the edible part is dried to permit its shipment in the condition of the imported merchandise, exhibit 1, *supra*, that is used in the preparation of "shark fin soup."

To support the claim for classification under the provision for "shark fins" in paragraph 717 (c), as amended, *supra*, counsel for plaintiff, in their brief, cite the case of *Nootka Packing Co. et al.* v. *United States*, 22 C. C. P. A. (Customs) 464, T. D. 47464. In that case, the court found the merchandise to consist of "razor clams which, after shelling, have had the stomachs, entrails and parts of the necks removed, and which have been washed, drained and put through a mincer." The processed clam meat was put in cans to which were added a brine "partly salt and partly fresh water," "for seasoning and delivery," and then steamed for about 5 minutes to produce a vacuum, and finally sealed and cooked for a period of from 1 hour 15 minutes to 1 hour 22 minutes, making the product ready to eat, in which condition it was imported. The collector had classified the merchandise under paragraph 721 (b) of the Tariff Act of 1930, which provides for "Clams, clam juice, or either in combination with other substances, packed in air-tight containers." Plaintiffs sought free entry for the merchandise under the provision for shellfish, prepared or preserved, in paragraph 1761 of the Tariff Act of 1930. In sustaining the collector's classification, the court stated:

The imported merchandise was entered and invoiced as "minced clams." Although cut into pieces, cleaned, and cooked, according to the testimony of the importers, it can be readily identified as parts of clams. Paragraph 721 (b) of the Tariff Act of 1930 provides for "Clams, clam juice, or either in combination with other substances, packed in air-tight containers." It will be observed that this language is not restricted to clams in their raw or natural state, nor is it restricted to entire clams. It includes any clams in any condition, so long as they are clams. "Where a dutiable provision names an article without terms of limitation all forms of the article are thereby included unless a contrary legislative intent otherwise appears."

The reasoning employed and the principle invoked in the cited case cannot be applied in the present one. The provision, held to prevail therein, embraced a general class of articles, i. e., clams in combination with other substances, and, as stated by the appellate court, was not restricted to clams in their raw or natural

state, or to entire clams, but included "clams in any condition, so long as they are clams." In this case, the provision invoked by plaintiff does not name "an article without terms of limitation." On the contrary, said amended paragraph 717 (c) is restricted to "Fish, dried and unsalted," and the *eo nomine* designations, which include "shark fins," mentioned under the general category, are only those products that are "dried and unsalted." The reasoning is in line with plaintiff's argument, set forth in counsel's brief as follows:

* * * The introductory phrase, "Fish, dried and unsalted," applies both to the paragraph as enacted and to the modified provision in the agreement and of course fixed the general scope of both instruments. It is well settled that trade agreements under section 350 may not remove a commodity from a paragraph in which it was placed in the 1930 tariff, but may change only the rate of duty. *Abercrombie* v. *US*, 9 CCR 336, CD 709; *Bush* v. *US*, 26 CCR 251, 254, CD 1332; *Walco Bead Co.* v. *US*, CD 1445; *US* v. *Canadian National Railways*, 29 CCPA 272, 278, CAD 202; *US* v. *Wile* (CCA 2) 130 F 331, 332, TD 25223.

It follows that the specific inclusion of shark fins in the agreement can neither add to nor take away from the scope of paragraph 717 (c) as enacted. At most, it would change the rate on the fins, but here we have the peculiar fact that the specific designation "Shark fins" does not seem to have even that effect, because if they were already within the paragraph as originally enacted, as "other" dried and unsalted fish, they would remain there anyway, regardless of the trade agreement. * * *

The foregoing quotation serves to emphasize that paragraph 717 (c), as originally enacted and as amended, is confined to dried and unsalted fish. This limitation follows a pattern that covers several provisions, each of which contemplates fish in a certain form or a particular condition. Paragraph 717 (a) and (b) relates to "Fish, fresh or frozen," each of said subdivisions being limited to such fish that have been processed in some particular manner. Paragraph 718 (a) and (b) provides for "Fish, prepared or preserved in any manner," the distinction for classification under either of those subdivisions being the method of packing. Paragraph 719 relates to "Fish, pickled or salted," and paragraph 720 (a) covers "Fish, smoked or kippered." Paragraph 720 (b), under which the present merchandise was classified, provides for "Fish, prepared or preserved, not specially provided for." No such segregation is made for the classification of clams. Hence, the principle invoked in the *Nootka Packing Co.* case, *supra*, had controlling influence by virtue of the broad and generic statutory language affected. The rule has no application to the limited scope of the provision under which plaintiff seeks classification of the present merchandise.

The product before us has been subjected to a series of processes through which all identity as a shark fin has been destroyed, and an edible commodity has become available. The boiling and shredding processes completely changed the form, appearance, and composition of the crude shark fin and produced an advanced product, ready to eat and available for use in shark fin soup. Such treatment "prepared" the fish in the tariff sense of the term. *United States* v. *Conkey & Co.*, 12 Ct. Cust. Appls. 552, T. D. 40783, and *Stone & Downer Co.* v. *United States*, 17 C. C. P. A. (Customs) 34, T. D. 43323.

The conclusion that the commodity in question has been "prepared" brings for consideration plaintiff's contention concerning the relative specificity of the competing provisions. It has been held, as pointed out in plaintiff's brief, that a provision for merchandise that is "dried" is more specific than a provision for "prepared" merchandise. *United States* v. *Hammond*, 15 Ct. Cust. Appls. 386, T. D. 42567; *United States* v. *Enbun*, 19 C. C. P. A. (Customs) 79, T. D. 45224; *United States* v. *D. L. Moss & Co.*, 22 C. C. P. A. (Customs) 249, T. D. 47159; *Shallus & Co.* v. *United States*, 18 C. C. P. A. (Customs) 332, T. D. 44585; *Enbun Co.* v. *United States*, 14 Cust. Ct. 267, Abstract 50242. In all of those cases, however, drying was found to be either the sole process or the principal one in the treat-

# 481

ment of the merchandise. The same is not true with respect to the product under consideration. Here, drying the prepared fish is subordinate to all other processes, and is necessary because, as stated by the witness, it is "the only way that it [the prepared fish] could be shipped."

For all of the reasons hereinabove set forth, we hold the present merchandise to be properly classifiable under paragraph 720 (b), *supra*, as assessed by the collector.

The protest is overruled and judgment will be rendered accordingly.