(C.D. 2690)

Geo. S. Bush & Co., Inc.
B. A. McKenzie & Co., Inc. } *v.* United States

United States Customs Court, First Division

(Decided May 26, 1966)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*John W. Douglas*, Assistant Attorney General (*Charles P. Deem*, trial attorney), for the defendant.

Before OLIVER and NICHOLS, Judges, and WILSON, Senior Judge; NICHOLS, J., dissenting

WILSON, Senior Judge: The merchandise in the case at bar consists of frozen cooked tuna fish loins, which was classified under

paragraph 720(b) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, at the rate of 1 cent per pound as fish prepared or preserved, not specially provided for, in bulk or in immediate containers, weighing with their contents more than 15 pounds each. Plaintiffs contend the said merchandise should be held free of duty under the provisions of paragraph 1756 of the said act as tuna fish, fresh or frozen.

The pertinent provisions of the statutes under consideration are as follows:

Paragraph 720(b) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802:

Fish, prepared or preserved, not specially provided for:

  *   *   *   *   *   *   *

 In bulk or in immediate containers, weighing with
  their contents more than fifteen pounds each_____ 1¢ per lb.
                       net wt.

Paragraph 1756 of the Tariff Act of 1930:

Sea herring, smelts, and tuna fish, fresh or frozen, whether
or not packed in ice, and whether or not whole_____ Free

The record consists of the testimony of one witness for the plaintiffs, Mr. Robert Breskovich, executive vice president of Pacific Reefer Fisheries, Inc. Plaintiffs herein are the customs brokers and importers of record for the above-named concern. Mr. Breskovich stated that his company had been engaged in the tuna fish canning business for approximately 8 years, and that the company produces approximately 60 tons of canned tuna fish in an 8-hour day work shift (R. 4). He further stated that he had personally supervised the importation of the merchandise at bar. Describing the process of preparing the tuna in Japan for exportation to the United States, the witness testified as follows:

A. Well, the procedure which I have seen and observed personally, your Honor, is the Japanese maker receives the raw fish from the fishing boats, and it is brought to his plant. And the fish are taken to what they call a fish room where they are butchered and beheaded and probably gutted. And then the fish are wrapped in racks and put into what we call a pre-cooking oven. And the fish are cooked for a period of anywhere from three to five hours depending on their size until they are thoroughly cooked, allowed to cool overnight, and then brought to cleaning tables where women take these fish—the fish are placed in front of women and the women take these fishes and they clean them. They remove the fins and the bone and the blood meat, and such things as that. And from this we have what we call basically a cleaned loin. And then these loins are taken at the end of a conveyor table, taken from the end of the conveyor table and placed in additional racks which are put into a deep freeze

chamber and they are frozen for a period of about 24 hours. And then subsequent to that after they have been completely and thoroughly frozen they are removed from the freezing chamber and then placed in boxes, they are glazed and then placed in fiber cartons and then put into a cold storage room awaiting shipment aboard a ship. (R. 7–8.)

Plaintiffs' witness stated that he knew of no commercial use for tuna fish other than canning.

Mr. Breskovich further testified that the so-called precooking process reduces the weight of the raw fish by eliminating water in the fish, and that by precooking and cleaning, removing the skin and viscera and head and bones, the weight is reduced for shipping purposes, resulting in a saving in shipping expenses. After importation, the fish is thawed and placed on a packing table, and introduced into a packing machine which automatically fills cans with the fish. The witness stated that the cooking of the fish in Japan does not affect the condition of the fish for canning (R. 8, 11).

On cross-examination, Mr. Breskovich testified that the cooking of the tuna loins in the can in the United States was primarily for sterilization and not for the purpose of changing the tuna loins from a raw to a cooked state (R.12). He admitted that cooking was part of the ordinary processing of tuna fish and that, as imported, the tuna loins in question were "partially prepared"; that the cooking, cutting up, and skinning and boning of tuna fish before importation is part of the preparation of the fish (R.12–13). Plaintiffs' witness further testified that the cooking in Japan of these loins has no effect of preserving the fish. He stated that the tuna loins were not, as imported, ready for use as a food product but must be thawed, cleaned, and packed (R.14). On redirect examination, Mr. Breskovich stated that the cooked fish will decompose and spoil when left exposed to the elements if not frozen (R.15). On re-cross-examination plaintiffs' witness testified that the cooking of the fish in Japan takes anywhere from 3 to 5 hours depending on the size of the fish, until it is "thoroughly cooked" (R.16).

The issue in the case at bar is whether the frozen cooked tuna loins are more specifically provided for as tuna fish, frozen, not whole, under paragraph 1756 of the tariff act, *supra*, than under the provision for fish, prepared or preserved, not specially provided for, in immediate containers weighing with their contents more than 15 pounds each, under paragraph 720(b) of the tariff act, as modified, *supra*. Specifically, the question for determination is whether the precooking of these tuna fish loins requires classification of the merchandise as fish, prepared, rather than tuna, fresh or frozen.

As disclosed by the record, the imported tuna loins, rather than being shipped to this country in a raw, frozen state, are shipped in a cooked, frozen condition. Counsel for the plaintiffs in their brief maintain that the *eo nomine* designation for "tuna fish, fresh or frozen, whether or not packed in ice, and whether or not whole" in paragraph 1756 of the tariff act is more specific than "the broad description for 'fish prepared or preserved, not specially provided for, weighing with their contents more than fifteen pounds each' " in paragraph 720 (b) of the act. Counsel for plaintiffs in support of the claim herein asserts the proposition that the cooking of an article otherwise provided for under an *eo nomine* provision does not alter its dutiable status. In this connection, our attention is directed to a number of cases involving certain *eo nomine* designations under the relevant tariff acts.

In *Newman & Schwiers Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 64, T.D. 33310, the court held cooked, cured, deboned ham dutiable under the *eo nomine* provision for "hams" under paragraph 284 of the Tariff Act of 1909, rather than under paragraph 286 of said act for "Meats of all kinds, prepared or preserved, not specially provided for." The court therein, pages 65–66, stated:

It is conceded that the article at bar in its first estate is a ham, within the full and common meaning of that term. It is, then, the thigh of a hog cured by salting and smoking. If the article were then packed within a tin without further processing, it would undoubtedly remain a ham and would be dutiable as such. The question then arises whether or not the treatment of the article preliminary to its packing so changes its character and identity as to disentitle it to its original name. That treatment consists of two parts: First, the entire ham is cooked, and next, the thigh bone is removed. This is all that is done to the article before it is packed in the tin container. The court is of the opinion that the article in question does not lose its name and character as a ham by reason of either or both of these processes. The meat is, of course, the valuable part of the ham, and that is the real importation in any event; and when the entire meat of a single ham is packed alone in a single tin, not changed in any particular except that it has been cooked and the bone removed, it seems to the court that the contents of the tin may still be called a ham within the meaning of that term as used in the cited paragraph.

In *Brown & Co.* v. *United States*, 6 Ct. Cust. Appls. 415, T.D. 35977, the court held soya beans cooked and salted free of duty as "soya beans" under paragraph 606 of the Tariff Act of 1913, rather than dutiable under the provision for "Beans, * * * prepared or preserved" in paragraph 199 of said act. The appellate court, at page 417, stated:

The principle is well established that in determining the classification of goods an *eo nomine* designation must, unless a legislative intent to the contrary is clearly indicated, be preferred to terms of general

description and to enumerations which are broader in scope and less specific.  * * *

and at page 419, observed:

As the record on this appeal discloses no evidence which would justify us in concluding that soya beans cooked or prepared are no longer entitled to the designation of soya beans, and as we find nothing in the tariff act or in the history of the legislation which would warrant us in saying that Congress intended that the terms of general description in paragraph 199 should be preferred when brought into competition with the *eo nomine* designation of paragraph 606, we must hold that the merchandise was classifiable as soya beans rather than as beans prepared or as beans in tins, bottles, or similar packages.

In *United States* v. *General Hide & Skin Corporation*, 11 Ct. Cust. Appls. 78, T.D. 38731, the court held certain rabbit meat, cooked, specially prepared and put up in hermetically sealed tins classifiable under paragraph 227 of the Tariff Act of 1913 under the provision therein for "game" rather than under paragraph 545 of the act as "meats of all kinds, prepared or preserved, not specially provided for." In so holding, the court, page 81, stated:

It has been repeatedly held that where an article is designated without words of limitation, that designation will generally include the article in all its forms known to commerce.  * * *

The case of *Nootka Packing Co. et al.* v. *United States*, 22 CCPA 464, T.D. 47464, is cited by counsel for both parties in their respective briefs. That case involved clam meat, washed, and cut into small pieces, canned in brine and cooked. The merchandise was held properly dutiable under paragraph 721(b) of the Tariff Act of 1930 as clams, packed in air-tight containers rather than free of duty as "shellfish, fresh or frozen * * * or prepared or preserved in any manner." In so holding, the court, page 467, stated:

The mere mincing of the clams, or cleaning them, or cooking them, does not remove them from the designation of clams.  * * *

As heretofore noted, counsel for the plaintiffs herein contend that the cooking of the fish under the authority of the above decided cases does not serve to exclude the frozen tuna loins from classification under paragraph 1756. It will be observed, however, that in the cases above cited, the *eo nomine* designations there under consideration were designations without limitations, viz, "hams," "soya beans," and "clams." That is not the situation in the case at bar. In the *Nootka Packing* case, *supra*, our appellate court, page 466, stated:

The imported merchandise was entered and invoiced as "minced clams." Although cut into pieces, cleaned, and cooked, according to the testimony of the importers, it can be readily identified as parts of clams. Paragraph 721(b) of the Tariff Act of 1930 provides for

"Clams, clam juice, or either in combination with other substances, packed in air-tight containers." *It will be observed that this language is not restricted to clams in their raw or natural state, nor is it restricted to entire clams. It includes any clams in any condition, so long as they are clams.* "Where a dutiable provision names an article without terms of limitation all forms of the article are thereby included unless a contrary legislative intent otherwise appears." *Smillie* v. *United States,* 11 Ct. Cust. Appls. 199, 201, T.D. 38966. * * * [Emphasis supplied.]

In our opinion, the reliance of the plaintiffs on the cases above cited cannot support its claimed classification. Here, the *eo nomine* provision for tuna fish in paragraph 1756, *supra,* is limited, *inter alia,* to such tuna fish when fresh or frozen. It does not include "any [tuna fish] in any condition so long as [it] is [tuna fish]." Specifically, it does not include tuna fish which has been advanced beyond the raw state by cooking. Plaintiffs' witness admitted that cooking constitutes part of the preparation of canned tuna fish and that, as imported, the tuna loins in question were partially prepared (R.13) and then stated on cross-examination that the fish is cooked in Japan "anywhere from three to five hours" until "the individual fish is thoroughly cooked" (R.16). Accordingly, the cases cited by the plaintiffs are distinguishable in their application from the situation which here confronts us. We agree with the plaintiffs' conclusion respecting the relative specificity of the competing paragraphs here involved, but in our opinion the imported tuna loins are not described in paragraph 1756 under which it is claimed they are properly classifiable. The precooking process here employed excludes the merchandise from classification under the qualified *eo nomine* provision for tuna fish, fresh or frozen, and renders it classifiable under paragraph 720(b) of the tariff act, *supra,* as fish, prepared, not specially provided for.

With reference to predecessor paragraph 720 of the tariff act for "fish * * * pickled, salted, smoked, kippered, or otherwise prepared or preserved * * *," we find in the Summary of Tariff Information, 1929, at page 1157, under the heading "TUNA" the following:

Description and uses.—* * * The *fresh* eviscerated fish is *first cooled* for 2½ to 4 hours, skinned and beheaded, the light meat separated from the dark, and the two kinds of meat recooked in tins to which oil and salt are added before sealing. * * * [Italics ours.]

With reference to predecessor paragraph 1656, the Summary of Tariff Information, 1929, at page 2548 states:

TUNA, FRESH, FROZEN, OR PACKED IN ICE

Description and uses.—* * * Almost all of the Pacific coast catch is canned (see Fish Packed in Oil under par. 720). The Atlantic horse mackerel is sold fresh for immediate consumption.

The record in the case at bar discloses that the process of canning the tuna in question was performed in this country. In this connection, the 1929 Summary of Tariff Information, at page 2550, further discloses:

With respect to the United States customs duties the 25 per cent ad valorem duty on canned tuna, the free entry of *fresh* and *frozen* tuna, and the free entry of products of American fisheries are probably in part responsible for the location of the entire canning industry in the United States. [Italics supplied.]

It appears significant to us that when Congress, in the enactment of the fish and shell fish provisions of the tariff act, desired to permit free entry to such merchandise as was "prepared," it expressly provided to that effect. Paragraph 1761 of the Tariff Act of 1930 provides for free entry of "shrimps, lobsters, and other shell fish, fresh or frozen * * * or prepared or preserved in any manner * * *." In the above provisions, a distinction was expressly made between the raw product, fresh or frozen, and a product prepared from the raw product. It would seem that, in view of the aforesaid legislative provisions, if Congress intended paragraph 1756 of the Tariff Act of 1930 providing for "Sea herring, smelts, and tuna fish, fresh or frozen * * * and whether or not whole" to include, in addition, fish "prepared or preserved in any manner," it would have so provided in said paragraph 1756 as was done in the fish provisions of the act above noted. Accordingly, in our opinion, paragraph 1756 herein providing for "tuna fish, fresh or frozen * * *" does not embrace such fish as is "prepared" or "preserved."

Counsel for the plaintiffs also directs our attention to the holding of the court in *United States* v. *Aki Co.*, 12 Ct. Cust. Appls. 415, T.D. 40588, and *United States* v. *Hammond*, 15 Ct. Cust. Appls. 386, T.D. 42567, involving the classification of certain fish as "dried fish" under paragraph 718 of the Tariff Act of 1922. The provision for fish "prepared or preserved" was not, however, involved in those cases. The above cases arose under the Tariff Act of 1922. It appears that the various provisions of the Tariff Act of 1930 were enacted in the light of the *Aki Co.* and *Hammond* cases, *supra*, and, in the varied details of the present act, there is a clear indication that the duty to be imposed is to be more or less directly proportionate to the degree of advancement of the imported commodity. Accordingly, it would seem that, aside from the specific provision for fish "prepared or preserved" as noted in paragraph 1761 and paragraph 721(a) of the tariff act, any classification which does not result in the imposition of higher duties on "prepared" tuna fish than on the raw product would violate the congressional intent. In our opinion, the tuna loins here in question

are "prepared" by virtue of the cooking process here employed, as was also testified to by plaintiffs' witness.

For the reasons heretofore advanced, we are of the opinion and hold the tuna loins in question properly dutiable at the rate of 1 cent per pound under paragraph 720(b) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, as "fish, prepared or preserved, not specially provided for," as classified. The protests in the case are overruled. Judgment will issue accordingly.

### DISSENTING OPINION

NICHOLS, Judge: I respectfully dissent from the holding of the majority in this case.

The court focuses its attention, as I read the opinion, on whether the imports involved are "* * * tuna fish * * * frozen * * * not whole." The parties seem to agree they are "Fish, prepared * * *." Plaintiffs say they are both, and the doctrine of relative specificity makes the former classification control. But defendant, and the court, say the imports are not the former, only the latter, so relative specificity has no play. Yet, considered literally, they are tuna, are frozen, and are not whole. When then does paragraph 1756 not apply?

The court says "it does not include tuna fish which has been advanced beyond the raw state by cooking." This involves two assumptions, neither of which the court discusses, (a) that the cooking constitutes an advance, and (b) that tuna literally under paragraph 1756 is excluded, by implication of some kind, if it is advanced. Both assumptions I think require discussion, which I am, by default, left to provide.

As to assumption (a), I am not at all sure the cooking in Japan, described in the prevailing opinion, is a significant advance. Advance on what? Cleaning and freezing, as here, are not necessarily "advances" for tariff purposes, particularly where the question is whether or not a product has been "prepared" or not. *United States v. Conkey & Co.*, 12 Ct. Cust. Appls. 552, T.D. 40783; *Frosted Fruit Products Co.* v. *United States*, 18 Cust. Ct. 119, C.D. 1054; *United States* v. *W. S. Maraknoff et al.*, 16 Ct. Cust. Appls. 531, T.D. 43263; *United States* v. *Judson Sheldon Corp.*, 33 CCPA 73, C.A.D. 318. A significant advance I should think would have to be an advance not on the raw fish as caught but on the fish cleaned and frozen. However, the record leaves me uncertain how the cooking in Japan fits into the entire production flow from raw fish to the article in cans as sold to the consumer. Plaintiffs argue the cooking is a mere preparation for shipment, to reduce shipping costs, and not an advance, because after importation the fish has to be cooked once more. The

record shows the first cooking effects important changes in the character of the product. It does not appear whether the cooking in Japan is in any way necessary to make it feasible to ship tuna to United States canners if it is landed in Japan and there cleaned and frozen. Nor are we informed whether it is customary and usual to cook such tuna there, or was so on the date of importation or in 1930. Hence, an informed evaluation of the cooking as an advance or not is not possible.

The presumption of correctness requires us to presume that the collector considered these matters and found that there was an advance. The record does not enable us to say he was wrong, but I would want to reserve what my decision would be on the basis of completely satisfying evidence. The cooking here is done before the freezing which might indicate it is not an advance beyond freezing. Some dicta call cooking a raw product an advance, e.g., *United States* v. *Conkey & Co., supra*, at page 555. We have recently held that cutting of structural shapes to remove excrescent ends, cooling and straightening, is not advance beyond rolling, though done after rolling. *American Mannex Corp.* v. *United States*, 56 Cust. Ct. 31, C.D. 2608.

As to assumption (b), I am afraid the majority is mistaken as to the law. There is no reason why the merchandise falls out of paragraph 1756, if literally described therein, just because it is advanced. The Summary of Tariff Information, 1929, pages 2545 and ff., shows that of the three fish enumerated in the free list, paragraph 1756, two, the sea herring and the tuna, were largely used in canning. (The third, the smelt, was not caught in the United States.) The domestic supply of sea herring and tuna fluctuated and the canning industry often had to resort to imported fish. The Tariff Commission expressed the opinion quoted by the majority that the duty on canned tuna and the free entry of fresh and frozen tuna were together responsible for the location of the entire canning industry in the United States. This protective policy is best effectuated by interpretation, when permissible, which allows the domestic canning industry the widest possible access to duty free fish including the fish at bar.

The 1930 act has a provision, paragraph 717(a), very much *in pari materia* with paragraph 1756, for "fish, fresh or frozen (whether or not packed in ice), whole, or beheaded or eviscerated or both, but not further advanced (except that the fins may be removed) : Halibut, salmon, mackerel, and swordfish, * * *; other fish, not specially provided for, * * *." This would seem to show that when the Congress desired to exclude "advanced" fish from a provision for fish, fresh or frozen, it said so expressly.

The Government seeks to show that if paragraph 1756 includes

tuna "advanced" by cooking, it likewise includes fish that are pickled, smoked, packed in oil, etc.—a *reductio ad absurdum*. But fish prepared in these ways are all expressly referred to, in paragraphs 718–720, except only fish that are cooked, so the factor of relative specificity (discussed, *infra*) would have a different impact; moreover, legislative history discloses the intent that tuna packed in oil shall be dutiable.

Since paragraph 1756 provides, without limitation, for tuna fish frozen, whether or not whole, it covers all forms of tuna fish, frozen, as long as the article is still tuna fish, frozen, canned tuna being of course not frozen. In the boneless beef cases, it was held in this court and in the court of appeals that removing the bones did not take the merchandise out of the category of frozen beef, since that advancement did not convert the product into a new article. *C. J. Tower & Sons et al.* v. *United States*, 30 Cust. Ct. 235, 239, C.D. 1526; *Swift & Company et al.* v. *United States*, 33 Cust. Ct. 212, C.D. 1655; *United States* v. *J. H. Brown, Brown, Alcantar & Brown, Inc.*, 46 CCPA 1, C.A.D. 686.

Not all editions or alterations to an article will take it out of an *eo nomine* designation. Whether or not an article, which at one stage of its production, is appropriately classified under a particular designation, is no longer so, is a question to be determined by the facts of the case. *John J. Coates Co. et al.* v. *United States*, 44 CCPA 97, 101, C.A.D. 643. In that case, it was held that vegetable parchment paper which had been further treated with resin was still dutiable as vegetable parchment paper, since it did not appear that the resin treatment produced any significant change in its physical characteristics or utility. Cooking has been held not to take a product out of an *eo nomine* designation. *Neuman & Schwiers Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 64, T.D. 33310; *Brown & Co.* v. *United States*, 6 Ct. Cust. Appls. 415, T.D. 35977; *Nootka Packing Co. et al.* v. *United States*, 22 CCPA 464, T.D. 47464.

The tariff provision here, covering tuna fish, frozen, whether or not whole, must be differentiated from provisions containing limitations, such as that involved in *United States* v. *Charles R. Allen, Inc., et al.*, 37 CCPA 110, C.A.D. 428. There it was claimed that paragraph 758 of the Tariff Act of 1930, covering coconut meat, shredded and desiccated, or similarly prepared, included shredded or grated coconut meat cooked in sugar syrup, canned, and again cooked. The court pointed out that the *eo nomine* designation was limited by the term "desiccated, or similarly prepared;" that the merchandise was not prepared in a similar, but an opposite manner, to the way in which desiccated coconut meat was prepared, and that there was a shown legislative intent which would exclude shredded coconut meat packed in syrup from the classification.

Here there is no incompatibility between mere freezing and cooking and freezing, and the intent of Congress was to benefit the domestic canning industry by allowing free entry to tuna fish, fresh or frozen, generally used for canning. The merchandise here has not been converted into a new article and is used for the same purposes as frozen uncooked tuna, namely, canning.

Under all the circumstances I conclude that tuna cleaned, cooked, and frozen in Japan for export to a United States canning factory is enumerated under paragraph 1756. The differing language of TSUS might, of course, require a different result when it applies.

If the fish here involved was "advanced," it was likewise "prepared." The collector's determination, not effectively attacked, implies it was both. Therefore, the assumption of plaintiffs, that the merchandise is designated under both paragraph 1756 and under paragraph 720(b), is one I hold to be correct. If the instant merchandise is both "fish, prepared" and "tuna fish, frozen," it is classifiable under the latter provision which is more specific. Cf. *United States* v. *Haaker & Co. et al.*, 4 Ct. Cust. Appls. 471, T.D. 33884; *Geier & Geier, Inc.* v. *United States*, 13 Cust. Ct. 33, 37, C.D. 865; *C. J. Tower & Sons et al.* v. *United States, supra.*