(C.D. 4088)

B. A. McKenzie & Co., Inc., a/c Pacific Reefer Fisheries, Inc. *v.* United States

United States Customs Court, Third Division

(Decided October 13, 1970)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Sheila N. Ziff* and *John A. Winters*, trial attorneys), for the defendant.

Before RICHARDSON, LANDIS, and ROSENSTEIN, Judges; ROSENSTEIN, J.,
not participating

LANDIS, Judge: The subject matter of this protest is 50 short tons (2,000 cartons) of frozen cooked tuna fish loins imported from Japan into the port of Tacoma, Washington.

The fish was classified by customs under item 113.56, Tariff Schedules of the United States, at the rate of 1 cent per pound as fish, prepared or preserved, not specially provided for, not in oil, in bulk or in immediate containers weighing with their contents over 15 pounds each.

It is plaintiff's contention the fish should be admitted free of duty under item 110.10, Tariff Schedules of the United States, as frozen tuna, whether or not whole, but not otherwise prepared or preserved.

Upon plaintiff's motion the record of *Geo. S. Bush & Co., Inc., B. A. McKenzie & Co., Inc.* v. *United States*, 56 Cust. Ct. 517, C.D. 2690 (1966), was incorporated into the record of the present case, as was also the record in *B. A. McKenzie & Co., Inc., a/c Pacific Reefer Fisheries* v. *United States*, protests 63/16020 and 63/16030, subsequently decided February 26, 1970, 64 Cust. Ct. 124, C.D. 3970. The merchandise in the case before us is in all respects similar to the merchandise at issue in the above incorporated cases. The present case, however, involves the application of the Tariff Schedules of the United States whereas the two previous cases involved the Tariff Act of 1930, as modified by T.D. 51802.

The provisions of the Tariff Schedules of the United States applicable to the case at bar, are as follows:

SCHEDULE 1.—ANIMAL AND VEGETABLE PRODUCTS

PART 3. FISH AND SHELLFISH

Part 3 headnotes:

\*  \*  \*  \*  \*  \*  \*

2. In subparts A and B of this part, the term "whether or not whole" means if whole, or if processed by removal of heads, fins, viscera, scales, skins, or bones, or by filleting, division into pieces, or other cutting or slicing operations, but not minced or ground.

\*  \*  \*  \*  \*  \*  \*

Subpart A.—Fish, Fresh, Chilled, or Frozen

\*  \*  \*  \*  \*  \*  \*

| | | |
|---|---|---|
| | Fish, fresh, chilled, or frozen, whether or not whole, but not otherwise prepared or preserved: | |
| 110.10 | Sea herring, smelts, and tuna_____ | Free |

\*  \*  \*  \*  \*  \*  \*

Subpart D.—Other Fish Products

\*  \*  \*  \*  \*  \*  \*

| | | |
|---|---|---|
| | Fish, prepared or preserved, not specially provided for: | |

\*  \*  \*  \*  \*  \*  \*

| | | |
|---|---|---|
| | Not in oil: | |
| |  In bulk or in immediate containers weighing with their contents over 15 pounds each: | |
| 113.56 |   Tuna _____ | 1¢ per lb. |

For purposes of comparison, the prior provisions of the Tariff Act of 1930 provided:

Par. 1756. Sea herring, smelts, and tuna fish, fresh or frozen, whether or not packed in ice, and whether or not whole. [Free.]

Paragraph 720(b), as modified by T.D. 51802:

Fish, prepared or preserved, not specially provided for:

\*  \*  \*  \*  \*  \*  \*

| | |
|---|---|
| In bulk or in immediate containers, weighing with their contents more than fifteen pounds each_____ | \* \* \* |

The court in the incorporated *Bush* case, *supra*, held, in a divided opinion, that the fish was properly classified by customs as "Fish, prepared or preserved, not specially provided for" within paragraph 720(b), *supra*, rather than under the provision for "tuna fish, fresh or frozen" under paragraph 1756, *supra*, as claimed by plaintiffs.

In the incorporated *McKenzie* case, *supra*, the court similarly held on a record containing additional evidence offered by plaintiff that the fish was properly classified under paragraph 720(b) rather than under paragraph 1756 contended for by plaintiff.

As the evidence in the case before us is the same as that in the incorporated *McKenzie* case, we adopt the statement by the court in that case as to the substance of the facts in the case at bar, viz:

> The witness in the *Bush* case, *supra*, Mr. Breskovich, was executive vice-president of Pacific Reefer Fisheries, Inc., plaintiff in the case at bar, and the real party in interest. He had been to Japan and was familiar with the process that the tuna fish went through prior to being shipped to this country. He stated that:
>
> > * * * the Japanese maker receives the raw fish from the fishing boats, and it is brought to his plant. And the fish are taken to what they call a fish room where they are butchered and beheaded and probably gutted. And then the fish are wrapped in racks and put into what we call a pre-cooking oven. And the fish are cooked for a period of from three to five hours depending on their size until they are thoroughly cooked, allowed to cool overnight, and then brought to cleaning tables where women take these fish * * * and clean them. They remove the fins and the bone and the blood meat, and such things as that. And from this we have what we basically call a clean loin. And then these loins are taken at the end of a conveyor table, taken from the end of the conveyor table and placed in additional racks which are put into a deep freeze chamber and they are frozen for a period of about 24 hours. And then subsequent to that after they have been completely and thoroughly frozen they are removed from the freezing chamber and then placed in boxes, they are glazed and then placed in fiber cartons and then put into a cold storage room awaiting shipment aboard a ship.
>
> The three witnesses called by plaintiff in this case have added little to the testimony offered in the *Bush* case, *supra*. It was brought out that the color of the fish and its taste was changed after it had been initially steamed. The witness also stated that after the fish was imported, it was brought to the canning factory, it was defrosted, canned, oil and salt added, and then cooked again in the can at a temperature of 240 degrees for a period of 75 to 90 minutes. This served a dual purpose of sterilizing the fish to comply with health laws and achieving the flavor and texture of tuna fish that is palatable to the tastes of Americans. [C.D. 3970, 64 Cust. Ct., at pages 125–126.]

As heretofore stated, the case before us for decision involves the application of this evidence to the appropriate items of the Tariff Schedules of the United States as opposed to the Tariff Act of 1930, as modified, involved in the two incorporated cases.

Plaintiff has urged that headnote 2, part 3 of TSUS, *supra*, is helpful to its case as the tuna fish at bar, which plaintiff contends was cooked to remove the skins and bones and divide the fish into pieces, is within the definition of "not whole", as follows:

> . . . the term . . . "not whole" means . . . processed by *removal of* heads, fins, viscera, scales, *skins*, or *bones* or by filleting, *division into pieces*, or other cutting or slicing operations, but not minced or ground. [Emphasis quoted. Plaintiff's brief, page 13.]

However, this argument is irrelevant as TSUS item 110.10 under which plaintiff claims classification limits tuna fish not only to "whether or not whole" but also to "not otherwise prepared or preserved". This latter limitation did not appear in the 1930 Tariff Act, as modified.

In summary, from the evidence of record, the fish was precooked for what has been described as being a period of three to five hours and until thoroughly cooked, and as a result the color and taste of the fish were thereby changed and improved.

This was not confined to a deboning, cleaning, and cutting operation and plaintiff's witness Robert Silver indicated the fish was at least sometimes cleaned, cut and deboned without cooking, but the result was the flavor and eatability did not compare with the precooked product that is treated the same way. It is apparent the precooking placed the tuna fish in an advanced state of preparation taking it out of TSUS item 110.10 and placing it in TSUS item 113.56.

In our judgment item 110.10 of TSUS is even more restrictive than was paragraph 1756 of the Tariff Act of 1930 under which plaintiff failed to prevail in the incorporated *McKenzie* case, *supra*.

The merchandise was properly classified under TSUS item 113.56, and the plaintiff's protest is overruled.